**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bernardo PELAEZ,**
**Defendant–Appellant.**

No. 89–2284.

United States Court of Appeals,
Sixth Circuit.

Argued March 21, 1991.

Decided April 16, 1991.

Jennifer J. Peregord, Stephen J. Markman, U.S. Atty. (argued), Eric M. Straus, Asst. U.S. Atty., U.S. Dept. of Justice, Detroit Strike Force, Detroit, Mich., for plaintiff-appellee.

Richard M. Lustig, Robyn B. Frankel (argued), Lustig & Friedman, Birmingham, Mich., for defendant-appellant.

Before KEITH and MARTIN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant, Bernardo Pelaez, appeals his jury conviction and sentence for conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. For the following reasons, we affirm in part and reverse in part.

I.

On November 4, 1983, defendant was charged in a multi-count indictment, along with twenty-eight others, with conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On December 8, 1983, defendant was arrested in Florida by DEA agents pursuant to an arrest warrant. Defendant was arraigned on the federal indictment in the Eastern District of Michigan on December 21, 1983. A surety bond in the amount of $200,000, which had previously been provided in a Florida proceeding, was transferred and defendant was released pending trial.

On January 27, 1984, defendant appeared in court with his attorneys for a hearing on several pretrial motions. A trial date of March 6, 1984 was set by the court. Shortly afterwards, defendant fled to Colombia.

The district court granted the government's motion for permission to proceed with the trial *in absentia*. A jury trial was begun on March 8, 1984, and on April 3, 1984, defendant was found guilty on count one. Defendant's bond was forfeited, and a bench warrant was issued for his arrest on May 18, 1984. Counsel for defendant filed a motion opposing the sentencing of defendant *in absentia*. The district court granted the motion.

On December 5, 1985, the Assistant U.S. Attorney filed a petition pursuant to a 1981 extradition treaty between the United States and Colombia to hold the defendant for purposes of extradition to the United

States. The defendant was held in custody in Colombia for a period of 21 months until the Colombian Supreme Court ruled, in an Order dated July 30, 1987, that because the conspiracy in this matter occurred prior to the 1981 extradition treaty between the parties, the United States could not extradite the defendant from Colombia. Defendant was subsequently released from custody in Colombia in December 1987.

On September 13, 1989, Colombian authorities again arrested defendant in Colombia. On October 15, 1989, defendant was "extradited" to the United States for sentencing in the present case. On November 7, 1989, a sentencing hearing was held before the district court.

At the time of the sentencing hearing, a number of motions were before the court including defendant's motion to be returned to Colombia, alleging an illegal extradition, and a motion for the court to order that defendant be allowed credit for the time he had served while awaiting extradition in Colombia. Defendant's motion to be returned to Colombia was deferred until after sentencing. Defendant's motion for allowance of credit for time served was denied for failure to exhaust administrative remedies.

Upon completion of these matters, the court asked whether either the defendant or his attorney had anything to say about why the sentence of the court should not be imposed. Defendant's counsel responded, requesting that the sentencing hearing be delayed, but this request was denied. At the conclusion of the discussion, the court stated:

> The relief that the defendant seeks [return to Colombia] can be done after sentence is imposed and I think more appropriate after I impose the sentence. Therefore, unless there is something more that either counsel cares to address the Court, I—and I think there isn't. Both counsel have addressed the Court as they're entitled to do.

The court proceeded to sentence the defendant to 15 years imprisonment and ordered him to pay a $25,000 committed fine. The court recessed at 10:42 a.m.

At 12:45 p.m. the court reconvened. The court then stated:

> Let the record show that I have reconvened the Court to overcome, perhaps, not giving both the defendant and his attorney the opportunity to address the court with respect to the imposition of the sentence and the consequences. . . .

The court subsequently addressed both defense counsel and defendant and specifically asked whether or not the defendant wished to say anything to the court about mitigation of punishment. Lengthy statements were made by both defendant and his counsel. The defendant made statements regarding his personal life and minor role in the conspiracy and he pled for mitigation.

At the close of this proceeding, defense counsel asked that the court modify the sentence previously imposed based on his and his client's statements. The court replied that he could not conscientiously reduce the sentence and then stated "[as] far as reconsidering the sentence, that wasn't the purpose of having you back." On November 11, 1989, the final judgment was issued. Subsequently, on January 18, 1990, the district court denied defendant's motion to be returned to Colombia.

Defendant timely filed this appeal.

## II.

■ This court must first determine whether the district court insufficiently complied with Fed.R.Crim.P. 32(a)(1)(C) by failing to address defendant Pelaez concerning mitigating circumstances prior to the imposition of sentence.

Fed.R.Crim.P. 32(a)(1)(C) mandates that before imposing sentence, the court shall "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." This subsection of Rule 32 expressly incorporated the holding in *Green v. United States*, 365 U.S. 301, 304–05, 81 S.Ct. 653, 655–56, 5 L.Ed.2d 670 (1961), in which the Supreme Court stated that a sentencing court was required to afford the defendant an oppor-

tunity to speak personally in his or her own behalf. This circuit has stated in *United States v. Thomas*, 875 F.2d 559 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989) that maximum compliance with *Green* is expected and that it would construe Rule 32 quite literally. "Before the conclusion of the sentencing hearing, *the district judge must personally and unambiguously invite the defendant to speak in his own behalf.*" *Id.* at 563 (emphasis in original).

In the present case, the district court did address the defendant, stating:

Well, first of all I think I will inquire of *the defendant* and his attorney if either *the defendant* or his attorney have anything to say why the sentence of the Court should not be imposed other than what has been already referred to and is—by the Sentencing Memoranda and the two motions filed by the defendant.

However, the district court did not specifically invite the defendant to present any information in mitigation of the sentence. The Court of Appeals for the Fifth Circuit, in *United States v. Sparrow*, 673 F.2d 862, 864 (5th Cir.1982), disapproved of the omission of this specific language. In the present case, not only was this language omitted, but also at the conclusion of the hearing in which defendant had said nothing, the district court stated, "Therefore, unless there is something more that either counsel cares to address the court, I—and I think there isn't. Both counsel have addressed the court as they're entitled to do." Under these circumstances, we do not think the court sufficiently determined if the defendant wished to make a statement and present any information in mitigation of the sentence. *See United States v. Byars*, 290 F.2d 515, 517 (6th Cir.) (no inquiry was made directly to defendant whether he wished to make a statement in his own behalf before sentence was imposed), *cert. denied*, 368 U.S. 905, 82 S.Ct. 185, 7 L.Ed.2d 99 (1961); *but see United States v. Franklin*, 902 F.2d 501, 507 (7th Cir.) (court is not required to renew its invitation to defendant to make any statement he wanted in mitigation of sentence at end of hearing when neither defendant nor his counsel indicated that defendant wished to speak), *cert. denied,* — U.S. —, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).

■ The government argues that any deficiency in the application of Fed.R.Crim.P. 32(a)(1)(C) was cured when the district court reconvened and invited defendant to discuss mitigating circumstances. The court apparently became aware of its prior error, because two hours later it reconvened "to overcome, perhaps, not giving both the defendant and his attorney the opportunity to address the Court with respect to the imposition of the sentence and the consequences." The defendant accepted the invitation of the court and argued that he collected the money for the drugs but never delivered the drugs, that his minor role in the conspiracy was not to bring cocaine into the United States, and that he wanted to return to Colombia to be with his wife and child whom the drug lords had threatened to torture or kill.

Defendant's counsel asked to present witnesses to testify about defendant's minor role in the conspiracy, but the district court properly declined, stating that that would be going beyond the record and was beyond the scope of the hearing. The district court also listened to defense counsel's objections to statements made in the presentence report and agreed to several deletions and changes requested by defendant.

However, when defendant's counsel requested that the court modify the sentence, the following colloquy took place:

THE COURT: Well, I've already imposed the sentence, and the sentence would stand unless I modify it.

MR. LUSTIG: [defendant's counsel] That's what we're asking you—I ask that you modify it, and—

THE COURT: Well—

MR. LUSTIG: —the Government asks—

THE COURT: —frankly, Mr. Lustig, I can't conscientiously do that because I think the overall picture is that this defendant was the source of a large amount of cocaine coming into the United States, and I think it—where he fled

the country and deprived himself of the right to be present to assist you and to even possibly testify. He fled, jumped his bail, and he's responsible for his own acts, so I don't think I—I can't conscientiously reduce that sentence if that's what you're asking the Court to do.

MR. LUSTIG: Well, then I don't understand the purpose of returning if you couldn't conscientiously do that.

THE COURT: Well, I was just seeing if there's anything you could modify here. That's only—I was—I—*far as reconsidering the sentence, that wasn't the purpose of having you back* because the posture of this case at the time that came up is that you were—I didn't want this defendant to be deprived of the right to address the Court. You addressed the Court at some length, and then you went on as—even this afternoon on the—renewed this sentencing procedure. You addressed the Court again and the defendant has addressed the Court, and that was the only purpose of having you back.

We find that the remark, "[as] far as reconsidering the sentence, that wasn't the purpose of having you back," indicates that although the district court agreed to listen to the defendant's statements in his behalf, the court had no intention of reconsidering the sentence and defendant's right of allocution was thus effectively denied. See *Sparrow*, 673 F.2d at 864–65. For this reason, we reverse the district court on this issue and remand the case for resentencing so that defendant may exercise his right of allocution under Fed.R.Crim.P. 32(a)(1)(C).

### III.

■ We must next determine whether the district court erred in refusing to credit defendant with time previously served in custody for this offense.

Defendant seeks sentencing credit under 18 U.S.C. § 3568, which provides that "[t]he Attorney General shall give [a prisoner] credit towards service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Although this section was repealed by the Sentencing Reform Act, its provisions remain applicable to offenses committed prior to November 1, 1987.

The government contends that the defendant must first exhaust administrative relief from the Bureau of Prisons before filing a motion for sentence credit in district court. We agree. Since the Attorney General had delegated the right to make the determination of sentence credit to the Bureau of Prisons,[1] courts have held that the district courts are without jurisdiction to entertain sentence credit motions unless the defendant has first sought administrative relief through the administrative procedures within the Bureau of Prisons. *Chua Han Mow v. United States*, 730 F.2d 1308, 1313 (9th Cir.1984), *cert. denied*, 470 U.S. 1031, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985); *United States v. Mathis*, 689 F.2d 1364, 1365 (11th Cir.1982).

Defendant concedes that he has not yet received an initial determination from the Bureau of Prisons regarding credit for time allegedly served in the United States and Colombian prisons prior to sentencing. He asks this court to order the Bureau of Prisons to credit him with the time previously served for the offense. Only after defendant has received a determination from the Bureau of Prisons and exhausted the administrative remedies available to him does this court have jurisdiction to review that determination. The district court did not err in refusing to credit defendant with time previously served in custody for this offense because defendant has failed to exhaust administrative remedies.

### IV.

■ Finally, this court must determine whether the district court erred in denying defendant's motion seeking to be returned to Colombia.

---

**1.** 28 C.F.R. § 0.96 states that "[t]he Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons ... charged with or convicted of offenses against the United States."

Defendant argues that the district court erred in refusing to divest itself of jurisdiction over him and return him to Colombia because the Fifth Amendment's due process clause was violated by his alleged "forcible abduction" from Colombia. Defendant relies on *United States v. Toscanino*, 500 F.2d 267 (2d Cir.1974), a Second Circuit opinion in which the court recognized the possibility that the declination of jurisdiction might be required "as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." *Id.* at 275. In *Toscanino*, the defendant alleged that he had been abducted and tortured by United States agents during extradition to the United States.

In contrast, in the present case, defendant did not contend below, and does not contend on appeal, that United States officials had any involvement whatsoever in his extradition from Colombia in September 1989. Instead, he acknowledges in his motion that he was rearrested by the Colombian authorities. In addition, as noted by the district court, defendant filed no affidavit in support of his motion nor did he allege or argue that any degree of physical force or brutality was involved in his arrest in Colombia as was the case in *Toscanino*.[2]

■ A forcible abduction in itself does not offend due process or require dismissal of an indictment. *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421 (1886) (the power of a court to try a person for a crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a "forcible abduction"); *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) ("This court has never departed from the rule announced in *Ker*"). Although notions of due process have been expanded since *Frisbie*, the Supreme Court has consistently reaffirmed the *Ker–Frisbie* doctrine by application of the rule that the body or person of a defendant is never "suppressible as a fruit of an unlawful police arrest" or detention. *Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984); *see also United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975).

The Fifth, Seventh, and Eleventh Circuits have refused to adopt a *"Toscanino* exception"* to the *Ker–Frisbie* doctrine. *Matta–Ballesteros v. Henman*, 896 F.2d 255, 263 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990); *United States v. Darby*, 744 F.2d 1508, 1531 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985); *United States v. Winter*, 509 F.2d 975, 986–88 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).

Even if *Toscanino* were a valid exception to *Ker–Frisbie*, its rationale is wholly inapplicable to the case at bar. First, Pelaez was a fugitive from justice. There is a difference between a person who submits to the jurisdiction of a criminal court and then flees, and one who stays away and never appears in the criminal proceeding at all. *See United States v. Reed*, 639 F.2d 896, 903 (2d Cir.1981). Second, Pelaez acknowledges that United States officials had no involvement in his seizure and removal from Colombia. *United States v. Lira*, 515 F.2d 68, 70–71 (2d Cir.) (*Toscanino* not applicable if alleged mistreatment was not at the hands of United States officials), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975). Third, Pelaez has not even alleged, much less demonstrated, that his extradition was accomplished through torture, brutality, or physical force. For

---

**2.** On remand, the district court in *Toscanino* denied the defendant's motion to dismiss based upon a finding that the defendant had not submitted any credible evidence that United States agents had participated in Toscanino's abduction and torture. 398 F.Supp. 916, 917 (E.D.N.Y.1975). Furthermore, the Second Circuit narrowed the reach of *Toscanino* in a subsequent opinion by clarifying that a defendant must prove "torture, brutality, and similar outrageous conduct" by federal officials in order to establish a violation of the due process clause. *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 65 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).

all of these reasons, *Toscanino* is not applicable and the district court's denial of Pelaez's motion for return to Colombia should be affirmed.

## V.

To conclude, the decision of the district court is AFFIRMED in part and REVERSED in part. Until administrative remedies are exhausted, the district court does not have jurisdiction to make a determination on sentencing credit. The decision of the district court to deny defendant's motion to be returned to Colombia is AFFIRMED. The district court's imposition of sentence is REVERSED. Because defendant's right of allocution was denied, the case is remanded to the district court for resentencing.