RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-3109

CHARLES A. GRIFFIN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00303—John R. Adams, District Judge.

Argued: April 29, 2008

Decided and Filed: July 7, 2008

Before: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Andy P. Hart, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant. Bridget Meehan Brennan, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Dennis G. Terez, Jonathan P. Witmer-Rich, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Robert William Kern, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Charles A. Griffin pled guilty to making, uttering, and possessing forged securities of an organization in violation of 18 U.S.C. § 513(a) and identity theft in violation of 18 U.S.C. § 1028(a)(7). At his sentencing, the district court announced a sentence that included 70 months imprisonment, a significant upward departure, before Griffin addressed the court. Following an objection by counsel, the district court allowed Griffin to speak, after which it modified the sentence to require drug treatment during supervised release and to recommend drug treatment during incarceration. Griffin argues that: (1) he was denied his right of allocution; and (2) his sentence is unreasonable.

For the reasons set forth below, we conclude that the defendant was not denied the right of allocution and that the sentence was reasonable.

1

I.

On June 22, 2005, Charles A. Griffin, along with other defendants, was indicted. The charges against Griffin included conspiracy in violation of 18 U.S.C. § 371 (count 1), making, uttering, and possessing forged securities of an organization in violation of 18 U.S.C. § 513(a) (counts 22-25), and identity theft in violation of 18 U.S.C. § 1028(a)(7) (count 31).

On September 16, 2005, pursuant to a written plea agreement, Griffin pled guilty to Counts 22-25 and Count 31. Pursuant to the terms of the plea agreement, Griffin agreed to cooperate with the government, which included his promise to provide truthful testimony. The plea agreement specified that if Griffin provided "any false or misleading information, documents, or testimony," that would constitute a breach of the plea agreement. It added that, if a breach occurred, the government would be released from all obligations under the agreement and could "make any recommendations with respect to sentencing that would otherwise be prohibited under the terms of the agreement."

A pre-sentence report ("PSR"), dated December 6, 2005, was prepared. It calculated an offense level of 12, which included a two-level downward departure for acceptance of responsibility, and a criminal history category of VI, which resulted from 29 criminal history points. It calculated a corresponding advisory Guidelines range of 30 to 37 months. The PSR also stated that there were "reasonable grounds for an upward departure, due to the likelihood that the defendant will commit other crimes, and because he has pending cases in Alabama for similar conduct, during the same time period. A Criminal History Score of 13 points is considered the highest criminal history category. This defendant accumulated a total of 29 points." On December 14, 2005, the district court ordered that Griffin's sentencing be scheduled after the trial of Rhonda Turpin, a co-defendant.

In September 2006, the government called Griffin as a witness during Turpin's bench trial. Griffin's testimony at trial differed from the factual basis for his plea agreement and a written statement he made during the investigation in that he minimized Turpin's role in the conspiracy. At Turpin's bench trial, the district court rendered a verdict of not guilty on Counts 22, 23, 24, and 25, and a guilty verdict on other counts to which Griffin's testimony did not relate. The district court found that Griffin was not credible "in some respects" but stated that the not guilty verdict on some counts was based upon Griffin's testimony.

On December 13, 2006, Griffin's sentencing hearing began. The government objected to a downward departure for acceptance of responsibility, arguing that Griffin breached the plea agreement by giving false testimony at Turpin's trial. The district court permitted the parties to brief the acceptance of responsibility issue, following an objection by Griffin that he was unaware that the prosecution would seek such recourse. The district court also gave notice that it was considering a substantial upward departure or variance and permitted the parties to brief that issue. The district court stated, "This record is one that is, quite frankly, as lengthy as many as [sic] I have seen. . . in my mind, [Griffin] poses the highest likelihood of recidivism, he is an individual who poses great risk to the public. A long sentence is in order in this particular matter, in order to [deter] his future conduct."

The sentencing hearing was reconvened on January 4, 2007. The district court found that Griffin "went out of his way in every effort, in every way, shape and form during the course of his testimony [at Turpin's trial] to either minimize or to completely exonerate, if possible, Miss Turpin from any and all involvement in this case." It further found that Griffin was "not credible in any way, shape or form in his testimony" and that the "perjured testimony" "directly contradicted" Griffin's earlier statement.

The district court declined to give a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 since it had not placed the parties on notice of such an enhancement but found that the requirements for such an enhancement were met. It stated, however, that it could consider Griffin's testimony as part of its overall consideration of the sentencing factors under 18 U.S.C. § 3553(a). The district court did not give Griffin a two-level downward departure for acceptance of responsibility and found the offense level to be 14, rather than 12. With a criminal history category of VI, the advisory guidelines range was thus 37 to 46 months. The district court explained that an upward departure was necessary under U.S.S.G. § 4A1.3 because "the defendant's criminal history category substantially underrepresents [sic] the seriousness of the defendant[']s criminal history or, more importantly, the likelihood the defendant will commit other crimes." The district court stated, "A sentence within the advisory guidelines in this case would in no way, shape or form meet any of the needs of the court." The district court noted that Griffin previously served "numerous periods of incarceration," including a four-year sentence and had not "learned his lesson" from his past sentences. Instead, after relating Griffin's criminal history in detail, it concluded that a "substantial variance and / or upward departure" was necessary and departed upward from an offense level of 14 to an offense level of 20. It explained,

> I would call to the attention of any reviewing court this record of this defendant and the fact that the only times, if any, he lives a law abiding life is when he is incarcerated. And continues to commit new offenses while under community controlled sanctions. And has never appeared to learn any lessons from any period of incarceration he has served.

The district court imposed a sentence of 70 months, restitution of $52,499.98, a $500 special assessment, and supervised release with specified conditions. Griffin was informed of his right to appeal and counsel was appointed for the appeal.

At that point, defense counsel objected to the procedures used at the sentencing, specifically, that Griffin had not been called upon to address the district court. The district court stated that it was in error and that it would be "glad to hear from [defense counsel] about how [counsel] wish [the court] to remedy that problem." The district court invited Griffin to speak stating, "I'm not certain he can persuade me otherwise, but I will be glad to hear from him. In my attempting to address all the various objections and issues, I did not mean to overlook him." Griffin addressed the court, arguing that his criminal history was overstated and that his criminal history resulted from drug addiction. The court and the defendant engaged in a dialogue and the district court asked several questions including, "So what is it you would tell me, that you would assert to me, that judge, I want to persuade you I deserve a lesser sentence?" Griffin requested drug treatment. When the defendant concluded speaking, the district court stated, "I will take into consideration your comments. . . ." The district court recommended drug treatment during incarceration to the extent Griffin was eligible.

Defense counsel next asked to address the court, stating, "I'm sorry to interrupt. But if I may also address the question the court asked. It doesn't appear that anything I have to say will make a difference on the sentence of the court." The district court responded, "It may. Just depends on what you have to say." Counsel addressed Griffin's addiction to drugs. He requested that the court "fashion a sentence which, during the period of supervised release would require completion, successful completion of an impatient drug program, and intermittent civil monitoring and supervision of Mr. Griffin after completion of the drug treatment program." The district court granted this request, ordering impatient drug treatment following Griffin's release. The defendant once again spoke, addressing prior attempts at drug treatment and his nine-year-old son and mother in her late sixties that he would like to be involved with. The district court explained that Griffin's record had "come back to haunt" him, and concluded, "That will be the court's order."

On January 10, 2007, Griffin filed a timely notice of appeal.

II.

A.

We review a defendant's claim of denial of allocution *de novo. United States v. Wolfe*, 71 F.3d 611, 614 (6th Cir. 1995). Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) provides that, "before imposing sentence, the court must: . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." "Allocution, a defendant's right to speak in his or her behalf before pronouncement of sentence, is not an empty formality. A defendant has the right to address the sentencing court and demonstrate why he or she deserves a lesser penalty than the court would otherwise be inclined to impose." *United States v. Riascos-Suarez*, 73 F.3d 616, 627 (6th Cir. 1996), *abrogated on other grounds by Muscarello v. United States*, 524 U.S. 125, 127 (1998). The sentencing court should address the defendant personally and ask him if he wishes to speak before sentencing. *Green v. United States*, 365 U.S. 301, 305 (1961).

B.

Griffin argues the district court violated Federal Rule of Criminal Procedure 32(i)(4)(A)(ii) by failing to address him and permit allocution until after the sentence had been imposed. Griffin contends that the allocution following sentencing was insufficient because the sentence was not formally vacated and Griffin was not resentenced.

Here, as the district court conceded, it erred in sentencing Griffin before allowing him to address the court. The question is whether the corrective measures taken by the district court were sufficient to correct the error. We conclude that they were.

Generally, "[i]n order to ensure a meaningful exercise of [a defendant's] right of allocution, he must be placed 'in the same position as if he had never been sentenced.'" *Riascos-Suarez*, 73 F.3d at 627-28 (citing *United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir. 1993) (per curiam)).

We examined a situation where corrective measures failed to place the defendant in such a position in *United States v. Pelaez*, 930 F.2d 520 (6th Cir. 1991). In *Pelaez*, just before announcing sentence, the district court asked whether defendant or his attorney had anything to say about why sentence should not be imposed. Then the court said:

> The relief that the defendant seeks [return to Colombia] can be done after sentence is imposed and I think more appropriate after I impose the sentence. Therefore, unless there is something more that either counsel cares to address the Court, I-and I think there isn't. Both counsel have addressed the Court as they're entitled to do.

930 F.2d at 522. After this comment, the court sentenced defendant. Approximately two hours later, the district court reconvened, stating, "Let the record show that I have reconvened the Court to overcome, perhaps, not giving both the defendant and his attorney the opportunity to address the court with respect to the imposition of the sentence and the consequences. . . ." *Id.* The district court asked the defendant if he wished to make a statement in mitigation, which the defendant did. *Id.* But the district court declined to modify the sentence and stated, "[as] far as reconsidering the sentence, that wasn't the purpose of having you back." *Id.* This court concluded "that the remark, '[as] far as reconsidering the sentence, that wasn't the purpose of having you back,' indicate[d] that although the district court agreed to listen to the defendant's statements in his behalf, the court had no intention of reconsidering the sentence and defendant's right of allocution was thus effectively denied." *Id.* at 524.

In contrast to *Pelaez*, we have considered in an unpublished case a situation where adequate corrective steps afforded defendant his right of allocution. In *United States v. Getzen*, after a district court announced a defendant's sentence, the government told the court that the defendant had not had the right to make a statement. 983 F.2d 1069 (table), 1992 WL 392849, at *2 (6th Cir. 1992). The district court asked the defendant if he wished to speak. After the defendant, his wife, his employer, and counsel made statements, the district court vacated the sentence. *Id.* The district court imposed the same sentence later that day. *Id.* This court concluded there was no error where "the district court decided to adjourn to reconsider the sentence in light of statements made on behalf of [defendant]." *Id.* at *3. This court added that vacating the sentence and deciding to impose the same sentence did not mean there was a denial of allocution. *Id.*

The record here reflects that the district court genuinely reconsidered Griffin's sentence. The court promptly conceded its error, invited Griffin to speak, and ultimately engaged in a dialogue with him and asked several questions of the defendant. The court assured Griffin that it would consider his comments and then recommended drug treatment during incarceration, as Griffin had requested in his statement. At this point defense counsel asked to address the court and expressed skepticism that anything he might say would make a difference in the sentence. The court responded that whether the comments would make a difference depended on what counsel said. After counsel addressed Griffin's drug addiction, the court again modified the sentence to include drug treatment during supervised release. Griffin then spoke again, and the court explained that the length of the sentence would remain the same because of Griffin's prior record. The court's passing comment that it was not sure Griffin's comments would persuade him does not undermine the determination of genuine reconsideration; rather, the court was letting Griffin know that he had previously considered the sentence on the basis of all the information presented. This situation differs greatly from that in *Pelaez*, where the district court expressly told the defendant that he had not been allowed to speak for the purpose of reconsidering his sentence. The steps taken by the district court here corrected the error and afforded Griffin his right of allocution in conformity with Federal Rule of Criminal Procedure 32(i)(4)(A)(ii). The court was not required to engage in the formality of vacating the sentence.

Griffin relies upon a Seventh Circuit decision in support of his argument that the district court's corrective measure were insufficient, *United States v. Luepke.* 495 F.3d 443 (7th Cir. 2007). In *Luepke*, the district court announced a sentence and later asked Luepke if he wished to bring anything to the court's attention. *Id.* at 445. Luepke replied, "Nothing. I'm just sorry for everything that's been done and the outcome of this." *Id.* The Seventh Circuit concluded, "We do not believe that the district court's belated invitation to Mr. Luepke to speak after the announcement of the sentence alters, in any significant way, the detriment to the defendant from the court's earlier error." *Id.* at 450. It explained, "However, in order for this process to be truly effective, we [note] that the district court must genuinely reconsider the sentence in light of the elicited statement." *Id.* (internal quotations and citation omitted). The Seventh Circuit further stated, "When the record reflects that the judicial officer took such steps to ensure such a de novo review and explicitly assured the defendant that the sentence would be considered de novo on the basis of his statement, the error has been corrected." *Id.* We decline to adopt the Seventh Circuit's language requiring explicit assurance of *de novo* consideration. We note, however, that our precedent is consistent with the Seventh Circuit's requirement of genuine reconsideration and assures that defendants are not denied their right of allocution.

III.

1.

An appellate court reviews a district court's sentence to determine if it is unreasonable. *United States v. Booker*, 543 U.S. 220, 261 (2005). Following *Booker* sentencing decisions are

reviewed for abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *see also Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (stating that appellate courts review the reasonableness of a district court's sentence for an abuse of discretion).

This court "first ensure[s] that the district court committed no significant procedural error," and next "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597; *see also United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008).

A sentence is procedurally unreasonable if the court committed serious procedural error "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597. When reviewing for substantive reasonableness, if a sentence falls within the Guidelines range, an appellate court may "apply a presumption of reasonableness." *Id.* Although this court applies such a presumption of reasonableness to sentences within the Guidelines range, there is no presumption against a sentence that falls outside of this range. *United States v. Smith*, 474 F.3d 888, 892 (6th Cir. 2007). "A reviewing court will find that a sentence is substantively *unreasonable* where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) (citation and internal quotation marks omitted).

2.

Griffin argues his 70 month sentence is unreasonable because the district court's upward departure from his advisory Guidelines range of 37 to 46 months was excessive.

Section 4A1.3(a) of the United States Sentencing Guidelines provides for an upward departure when a defendant's criminal history category does not adequately reflect his criminal history. U.S.S.G. § 4A1.3(a)(1) states:

> Standard for Upward Departure.--If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

U.S.S.G. § 4A1.3(a)(4)(B) states:

> Upward Departures from Category VI.--In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

Thirteen criminal history points is the threshold for designation as a criminal history category of VI, the highest criminal history category. U.S.S.G. hh. 5.

Pursuant to U.S.S.G. § 4A1.3, Griffin's sentence of 70 months would be within the newly calculated range of 70 to 87 months for offense level 20 and criminal history category VI. Griffin argues that the extent of the departure was unreasonable. We review the extent of the departure for reasonableness. *See Smith*, 474 F.3d at 894.

Griffin argues that his criminal history score of 29 overstates, rather than understates, his criminal conduct and his criminal history score alone does not warrant a six-level upward departure. Specifically, he contends that subtracting four points – two points for motor vehicle violations, one point for an unpaid cab fare, and one point for an unidentified attempted theft – would reduce his criminal history points to 25.

Griffin further contends that the sentence is unreasonable based upon the methodology employed in *United States v. Williams*, 238 F.3d 426, 2000 WL 1872059 (table) (6th Cir. 2000), *cert. denied*, 532 U.S. 988 (2001). In *Williams*, the district court devised a methodology for determining the extent of a departure for cases where a defendant's criminal history category was VI and he had more than 15 criminal history points. *Id.* at *2.[1] Using the *Williams* methodology, 25 points would result in a four-level increase while 29 points would result in a five-level increase.[2]

The *Williams* methodology, however, is not binding on the district court, and should not be substituted for the district court's judgment. *United States v. Brown*, 371 F.3d 854, 860 (6th Cir. 2004) ("This is not to say that § 4A1.3 prohibits a district court from using the *Williams* construct (or some similar expedient) as a reference point when determining the extent of an upward departure. But the use of such a construct-particularly one developed by a different judge in a different case-cannot replace the exercise of the court's independent judgment.") Rather, when reviewing the reasonableness of an upward departure, we consider "the seriousness of the defendant's past criminal conduct, the likeliness of recidivism, prior similar adult conduct not resulting in criminal convictions, previous lenient sentences for offenses, whether the sentence will have a deterrence on future criminal conduct, the necessity of isolating the defendant from the community and the length of time necessary to achieve rehabilitation, if rehabilitation is possible." *United States v. Thomas*, 24 F.3d 829, 833 (6th Cir. 1994).

The district court thoroughly considered these factors, finding that Griffin's criminal history category underrepresented his criminal history and that he was likely to commit other crimes. The district court stated, "A sentence within the advisory guidelines in this case would in no way, shape or form meet any of the needs of the court."

Given Griffin's extensive criminal history, the district court's finding that he was likely to reoffend, and the district court's finding that he committed perjury while testifying at Rhonda Turpin's trial, a six-level upward departure, resulting in a 70 month sentence (at the low end of the Guidelines range of 70 to 87 months for offense level 20 and criminal history category VI), was not unreasonable. Moreover, the district court was not required "to explain formalistically, gridblock-by-gridblock, why each intervening range [was] inappropriate." *Id.* at 835. Given that the *Williams* methodology is not binding, the district court did not err in employing its independent judgment to reach a result that accounted for Griffin's unique circumstances. *See Brown*, 371 F.3d at 860. Consequently, Griffin's argument that his criminal history points should be 25, rather than 29, is immaterial to the reasonableness of the departure because the district court accounted for the criminal history as a whole and did not use a formula based upon the number of criminal history points.

---

[1] The *Williams* court approved of the following approach used by a district court for grouping criminal history points: "13-15 (no increase), 16-18 (1-level increase), 19-21 (2-level increase), 22-24 (3-level increase), 25-27 (4-level increase), 28-31 (5-level increase), 32-35 (6-level increase), 36-39 (7-level increase), 40-43 (8-level increase), 44-47 (9-level increase), 48-(10-level increase)." *Id.*

[2] A four-level increase in the offense level would result in offense level 18 and criminal history category VI, a Guidelines range of 57-71 months. A five-level increase to offense level 19 and criminal history VI leads to a Guidelines range of 63-78 months.

Griffin also argues that the extent of the departure is excessive in view of the denial of a downward adjustment for acceptance of responsibility, stating that it "was due entirely to the fact that the government did not like the testimony Mr. Griffin gave at the trial of his co-defendant." The district court properly denied the points for acceptance of responsibility based on its finding that Griffin's "perjured testimony" at Turpin's trial contradicted Griffin's earlier statements. The denial lends no support to the assertion that the district court departed excessively.

Therefore, Griffin's sentence was reasonable, and the district court did not abuse its discretion in sentencing him.

IV.

For the foregoing reasons, we affirm the judgment of the district court.