**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0538n.06**

**No. 09-5218**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ┌─────────────────────────┐ |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | **Aug 05, 2009** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| CHAD SOCOLOVITCH, | ) | **WESTERN DISTRICT OF KENTUCKY** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Chad Socolovitch appeals from the sentence and order of restitution imposed on him. Socolovitch pled guilty to five counts of mail fraud in violation of 18 U.S.C. § 1341. The United States District Court for the Western District of Kentucky sentenced him to five months incarceration and five months of supervised release subject to the special condition of home confinement, followed by the remainder of three years of supervised release. The court also ordered Socolovitch to pay $63,575.50 in restitution. For the reasons that follow, we affirm the sentence and order of restitution.

I.

Socolovitch maintained two websites, prowrestlingrings4sale.com and prorings4sale.tripod.com, on which he offered wrestling rings for sale. The sites invited customers

to mail payment to a post office box in Louisville, Kentucky, controlled by Socolovitch. From 2001 to 2003, Socolovitch deposited various customer payments but failed to deliver the wrestling rings. After receiving complaints about the sites, the Kentucky Attorney General's Office began an investigation into Socolovitch that led to his eventual indictment on five counts of mail fraud on October 17, 2007.

Pursuant to a written plea agreement, Socolovitch pled guilty to the indictment. In exchange for his plea of guilty, the government agreed to recommend both a sentence at the lowest end of the United States Sentencing Commission Guidelines ("Guidelines") range and that Socolovitch be granted a two-level reduction for acceptance of responsibility. The government further agreed that, if Socolovitch paid $2,000 in restitution on or before the date of sentencing, it would stipulate that the amount of loss was greater than $30,000 but less than $70,000. Because the government had identified twenty-seven victims with an aggregate loss of $78,807.50, the practical effect of this stipulation was to reduce Socolovitch's anticipated total offense level by two. *Compare* U.S.S.G. § 2B1.1(b)(1)(E) (providing eight-level enhancement where loss is greater than $70,000 but less than $120,000), *with* U.S.S.G. § 2B1.1(b)(1)(D) (providing six-level enhancement where loss is greater than $30,000 but less than $70,000). At sentencing, however, the government indicated that it had been unable to locate all of the victims and that the total amount of loss it could prove was $63,575.50. Consequently, the court applied the six-level enhancement applicable to a loss greater than $30,000 but less than $70,000. This resulted in a total offense level of twelve and a recommended Guidelines range of ten to sixteen months in custody. Because the recommended sentence fell within Zone C of the Sentencing Table, the minimum term of imprisonment could be

satisfied by a split sentence of incarceration and home confinement. *See* U.S.S.G. § 5C1.1(d)(2).

Socolovitch objected to the basis for the court's finding that the amount of loss was $63,575.50. The government was prepared to offer the testimony of Tom Ginter, an investigator with the Consumer Protection Division of the Kentucky Attorney General's Office. Ginter was prepared to testify that he or the Assistant United States Attorney assigned to the case had spoken personally with each of the victims and verified the amount of loss, with the exception of one victim whose loss was based on a report she filed with the Better Business Bureau. Socolovitch stipulated that Ginter would testify to this information, but he argued that the testimony would have been hearsay and not sufficiently reliable. The court overruled the objections.

Accepting the court's finding that the amount of loss was $63,575.50–subject to the above objections–Socolovitch agreed with the court's Guidelines calculations but argued that the "spirit" of the plea agreement entitled him to an additional two-level reduction. In essence, Socolovitch's position was that he received nothing in exchange for bringing $2,000 to sentencing because the government would have been unable to prove loss greater than $70,000 in any event. The court disagreed that the plea agreement required a further reduction, finding that "the sentence is driven by the amount of loss." The court also reasoned that the government "made some concessions" because the amount of loss was at the high end of the relevant range of $30,000 to $70,000 while the recommended sentence was at the low end of the corresponding Guidelines range. Therefore, the court denied Socolovitch an additional two-level reduction.

Finally, Socolovitch addressed the 18 U.S.C. § 3553(a) factors. He argued that the collateral consequences of his conviction were unusually harsh because a felony conviction prevented him

from obtaining the work visas necessary to continue his career as a professional wrestler in Mexico and elsewhere abroad, as well as from seeing his wife and five-year-old son in Mexico. In light of these consequences and his lack of a criminal history, Socolovitch asked for a sentence of probation.

The district court imposed a split sentence of five months incarceration and five months of supervised release subject to the special condition of home confinement, followed by the balance of three years of supervised release. The court rejected a sentence of probation, finding that "anytime that fraud is committed and you steal $63,000, there has to be a term of sentence [*sic*] imposed." Although the court was sympathetic to Socolovitch's family situation, the court reasoned that a downward departure was not warranted on that score because the "collateral damage to loved ones" was not "out of the norm" and was, in fact, less severe than that the court had seen in other cases. Pursuant to the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, the court ordered restitution in the amount of the loss, or $63,575.50. Socolovitch timely appealed.

II.

We review "a district court's sentencing determination[] 'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S. Ct. 586, 591 (2007)). Reasonableness "contains both procedural and substantive components." *Lalonde*, 509 F.3d at 769. Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as

mandatory, failing to consider the § 3553(a) factors,[1] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall*, 128 S. Ct. at 597; *United States v. Garcia-Robles*, 562 F.3d 763, 766 (6th Cir. 2009). If we find that the sentence is procedurally reasonable, "we must 'then consider the substantive reasonableness of the sentence imposed.'" *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 597). Substantive reasonableness review requires us to take into account "the totality of the circumstances." *Gall*, 128 S. Ct. at 597. "A reviewing court will find that a sentence is substantively *unreasonable* where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a)

---

[1]Section 3553(a) provides in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) (internal quotation marks, brackets, and citation omitted). We apply a presumption of reasonableness to sentences that fall within the properly calculated Guidelines range. *See United States v. Griffin*, 530 F.3d 433, 439 (6th Cir. 2008).

A.

Socolovitch first argues that his sentence is procedurally unreasonable because the district court "fail[ed] to adequately explain the sentence." Specifically, Socolovitch contends that the court gave only "cursory consideration" to his family situation. We review this claim only for plain error because Socolovitch failed to object to the adequacy of the explanation before the district court.[2] *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*). To establish plain error, Socolovitch must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks and citation omitted).

Our review of the record in this case reveals that the district court did not err in announcing Socolovitch's sentence. The substance of Socolovitch's argument is that a term of incarceration poses a greater hardship on him than on other defendants because his family lives in Mexico. The court's comments at sentencing indicate that the court considered this argument and rejected it because, in the court's experience, the impact on Socolovitch and his family was not "out of the

---

[2]After the court announced Socolovitch's sentence and the reasons for it, the court asked "Are there any objections to the sentence pronounced or special condition imposed, all of which shall be incorporated in the judgment, not previously raised . . . [o]n behalf of the defendant?" Counsel for Socolovitch responded, "No, sir."

norm." The court explicitly stated that it gave consideration to Socolovitch's family situation.[3]

Although the court did not specifically discuss the fact that Socolovitch's wife and son live in

Mexico, it was not required to do so. Rather, the court was required to provide a statement of

reasons sufficient to persuade us that the court "considered the defendant's argument and . . .

explained the basis for rejecting it," *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007), which

it did. Consequently, the court found no reason to grant a downward departure on that basis. This

explanation, "though brief, was legally sufficient." *See Rita v. United States*, 127 S. Ct. 2456, 2468

(2007). Socolovitch has not raised any other procedural objection to his sentence. We find no

procedural error, plain or otherwise.

B.

Because we conclude that the sentence is procedurally reasonable, we must consider whether

it is substantively reasonable. *See Gall*, 128 S. Ct. at 597. We note at the outset that we afford a

presumption of reasonableness to sentences that, like Socolovitch's, fall within the properly

---

[3]In announcing Socolovitch's sentence, the court stated:

> If I look at all those [§ 3553(a)] factors, I'm mindful, sir, of the fact that it does affect you and your family. And collateral damage to loved ones always happens. It doesn't always happen, but it happens in 95 percent of the cases. It may affect you more than some, but it also affects you less than some. I can't say that it's out of the norm of the types of collateral damage.
>
> As a matter of fact, I see many, many cases with much more severe collateral damage to family members than I see here. So I don't see any reason to go differently or depart for any reason because of that issue.

calculated Guidelines range.[4]  *See United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009). Socolovitch argues that his sentence is substantively unreasonable because the district court failed to consider the § 3553(a) factors, because of his family situation, and because the sentence was inconsistent with the "spirit" of the plea agreement.

We address Socolovitch's first two arguments together.  Socolovitch argues that a custodial sentence was substantively unreasonable in light of his personal history, lack of a criminal record, and family situation, and that a sentence of probation would have been more appropriate.  The district court weighed the § 3553(a) factors and determined that a period of incarceration was necessary because Socolovitch defrauded his customers out of at least $63,000.  Socolovitch has not rebutted the presumption of reasonableness nor shown that this was an abuse of discretion. Socolovitch's argument that his sentence was excessively harsh is unpersuasive in light of the fact that it represented less than one percent of the statutory maximum term, fell at the bottom of the Guidelines range, and consisted of a split sentence that allowed him to serve half of the term in home confinement.

With respect to the plea agreement, Socolovitch argues that the "spirit" of the agreement entitled him to a two-level reduction to prevent a "sentencing windfall" for the government.  We

---

[4]Socolovitch argues that his sentence fell outside the Guidelines range because it consisted of only five months incarceration while the Guidelines range was ten to sixteen months.  However, the Guidelines range fell in Zone C of the Sentencing Table, which authorizes a split sentence of incarceration and home confinement.  *See* U.S.S.G. § 5C1.1(d)(2).  In this case, the district court imposed a sentence of five months incarceration and five months of home confinement, bringing the total term of imprisonment to ten months–the bottom of the Guidelines range. *See United States v. Strozier*, 940 F.2d 985, 988 (6th Cir. 1991).

interpret plea agreements according to traditional principles of contract law. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Paragraph ten of the plea agreement provides in relevant part:

> Should the defendant pay to the district court on [or] before the day of sentencing in this case an amount equal to at least $2,000, which monies will be applied toward restitution due and owing in his case, the United States will agree and stipulate that for purposes of applying sentencing guidelines, the court should use § 2B1.1(b)(1)(D), that is the guideline range for a loss greater than $30,000, but less than $70,000.

Thus, the language of the plea agreement bound the government to recommend that the court apply § 2B1.1(b)(1)(D) if Socolovitch brought $2,000 to sentencing. The fulfillment of the condition, however, did not require the government to argue for a two-level reduction. Nor did the "spirit" of the agreement require anything more. Although the government was in the best position to know the *provable* amount of loss, Socolovitch was in the best position to know the *actual* amount of loss–*i.e.*, the total amount of which he defrauded his customers. Socolovitch would not have entered into the plea agreement if he did not *know* that the actual amount of loss exceeded $70,000.[5] Yet,

---

[5]The government, however, apparently anticipated that it might not be able to contact all of the victims, bringing the provable amount of loss under $70,000. At sentencing, the prosecutor stated:

> We were close to the $70,000, and in order to encourage–and *I knew it was going to fall in under* because certain people we hadn't been able to get ahold of. And so in order to encourage some down payment, I did agree. That is why it's in the plea agreement.

Socolovitch argues that government's pre-plea knowledge that the provable amount of loss would fall below $70,000 necessitates a two-level reduction to honor the "spirit" of the plea agreement. We disagree. In contract terms, Socolovitch made a unilateral mistake of fact as to the amount of provable loss. Just as unilateral mistake of fact does not void a contract, *see Nicklin v. Henderson*, 352 F.3d 1077, 1081 (6th Cir. 2003), it does not warrant our rewriting the terms of the plea agreement here.

Socolovitch apparently now believes that the agreement was unfair. A review of the record convinces us that this is not the case. Pursuant to the plea agreement, the government agreed to recommend–and did recommend–a sentence at the low end of the Guidelines range despite the fact that the amount of loss was at the high end of the $30,000 to $70,000 range. In light of this concession from the government, as well as the sentence actually imposed by the court, the bargain was not a bad one for Socolovitch.

### III.

Finally, Socolovitch argues that the record does not adequately support the court's finding that the amount of loss was $63,575.50. We review the calculation of the amount of loss–a factual finding–for clear error. *See United States v. Jordan*, 544 F.3d 656, 671 (6th Cir. 2008).

Here, the PSR identified twenty-seven victims by their initials and, for each, listed the date of loss and the amount of loss. Ultimately, the government was unable to contact five of the victims prior to sentencing, and their losses were removed, bringing the total to $63,575.50. The full names of the twenty-two victims and the amount of loss attributable to each was listed on the judgment. Socolovitch stipulated that, if called to the stand, Ginter would have testified that he or the prosecutor personally contacted twenty-one of the victims and verified the amount of their loss and that the amount of loss attributed to the twenty-second victim was obtained from a complaint filed with the Better Business Bureau. Thus, the preponderance of the evidence supports the district court's determination that the amount of loss was $63,575.50, and we find Socolovitch's argument to be without merit. *See United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006).

IV.

For the foregoing reasons, we affirm.