2012 UT 28

**STATE of Utah, Plaintiff and Respondent,**

v.

**Charles MOA, Defendant and Petitioner.**

No. 20090882.

Supreme Court of Utah.

May 4, 2012.

Lori J. Seppi, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., Ryan D. Tenney, Asst. Att'y Gen., Salt Lake City, for respondent.

Chief Justice DURRANT, opinion of the Court.

## INTRODUCTION

¶ 1 This appeal encompasses two cases consolidated at the Utah Court of Appeals, each involving a separate shooting. In the first case (First Case), Charles Moa entered a no contest plea to a third degree felony, but later filed motions to withdraw that plea. At the hearing on his motions, he stipulated that his plea was taken in full compliance with rule 11 of the Utah Rules of Criminal Procedure. The district court ultimately concluded that Mr. Moa's plea was knowingly and voluntarily made and denied his motions. On appeal to the Utah Court of Appeals, Mr. Moa argued that the district court erred in denying his motions because his plea was *not* taken in compliance with rule 11. Because Mr. Moa had not preserved this argument, the court of appeals evaluated his claim un-

der the plain error standard. The court of appeals held that Mr. Moa was not entitled to withdraw his plea because he did not show that the district court committed plain error in denying his plea withdrawal motions.

¶2 In the second case (Second Case), Mr. Moa pled guilty to two felonies and a misdemeanor. He was sentenced on the charges, with the sentences to run consecutively to each other and consecutive to any previous sentence. Mr. Moa appealed, arguing that the sentencing judge abused his discretion by considering irrelevant information in imposing consecutive sentences. The Utah Court of Appeals rejected Mr. Moa's argument after concluding that there was no evidence the judge had actually relied on irrelevant information in imposing the sentence.

¶3 We granted certiorari to address two issues, one in each case. Regarding the First Case, we consider whether the court of appeals erred in holding that Mr. Moa failed to demonstrate plain error in the district court's denial of his motions to withdraw his plea. Concerning the Second Case, we assess whether the court of appeals erred in affirming the district court's imposition of consecutive sentencing.

¶4 We hold that we do not need to address whether the court of appeals correctly evaluated Mr. Moa's claim under the plain error standard because, by stipulating that his plea was taken in compliance with rule 11, Mr. Moa invited the district court's error. In addition, we hold that the court of appeals was correct in concluding that there is no evidence that the district court relied on any improper information in imposing consecutive sentences.

## BACKGROUND

¶5 Because this appeal encompasses two consolidated cases, we address the facts and issues of each case individually.

## I. THE FIRST CASE

¶6 In April 2003, Mr. Moa and two accomplices allegedly drove to a business parking lot, pulled out handguns, and fired several shots at a group of people. A few days later, Mr. Moa left Utah and spent the next three years in Washington and California, where he was charged with various other crimes. Eventually, he was arrested and brought back to Utah to face criminal charges stemming from the alleged shooting. Upon his return, he was charged with three counts of aggravated assault, a second degree felony.

¶7 After the charging documents were filed, Mr. Moa's first court-appointed attorney withdrew because of a conflict. On the day of his preliminary hearing, Mr. Moa requested that his second court-appointed attorney be removed. Mr. Moa's third court-appointed attorney attempted to negotiate a plea agreement that would allow Mr. Moa to plead "no contest" to one count of discharging a firearm from a vehicle, a third degree felony.[1] In exchange, the State would agree to drop the remaining charges, recommend a suspended sentence of zero to five years, and not bring any additional charges stemming from the shooting. Mr. Moa's counsel completed a plea affidavit outlining the terms of this plea deal. Before Mr. Moa could accept the plea agreement, however, his counsel filed a motion to withdraw on the basis of a conflict. The district court granted the motion and appointed Mr. Moa a fourth attorney.

¶8 Upon appointment, Mr. Moa's new counsel reviewed the proposed plea affidavit with Mr. Moa. During this meeting, Mr. Moa agreed to accept the plea deal that his prior counsel had originally prepared. When counsel informed the State of Mr. Moa's decision, however, the State responded that it wished to amend the plea deal so that Mr. Moa's sentence would be consistent with that of an accomplice in the shooting. Specifically, the State wanted Mr. Moa to remain in jail for twenty-one days so that his sentence

---

1. Under the statute applicable at the time Mr. Moa allegedly committed the crime, a person was guilty of the third degree felony of discharging a firearm from a vehicle if he "discharge[d] any kind of dangerous weapon or firearm ... from an automobile or other vehicle ... in the direction of any person ... knowing or having reason to believe that any person may be endangered." UTAH CODE § 76–10–508(1)(a)(i), (2)(a) (2003).

would be identical to that of his accomplice, who had been arrested before Mr. Moa but had agreed to plead to the same charge of discharging a firearm from a vehicle.

¶ 9 Unhappy with the State's decision to amend the plea agreement, Mr. Moa asked his counsel to renegotiate the plea deal so that he could be released from jail immediately. Before a status conference on the pending charges, the State agreed that if Mr. Moa would plead to the third degree felony of discharging a firearm *toward a building*, with a suspended sentence of *three to five years*, he could be released from jail that day.[2] Although both plea deals involved third degree felonies under Utah Code section 76–10–508, the amended charge involved different elements and increased the required sentence to a range of three to five years instead of a range of zero to five years.

¶ 10 Before accepting the "no contest" plea, the district court held a hearing where it reviewed the amended charge with Mr. Moa. During this hearing, the original plea affidavit was modified to reflect the new charge and the new sentence. But the modified plea affidavit did not list "intent to intimidate or harass another" as an element of the third degree felony charge. In addition, during the plea hearing, neither the judge, defense counsel, nor the prosecution articulated the necessary intent element of the offense. Nonetheless, the district court accepted Mr. Moa's no contest plea and released him from jail pending sentencing. Prior to sentencing, Mr. Moa filed timely pro se motions to withdraw his plea. In his motions, he argued that he should be allowed to withdraw his plea for three reasons. First, he stated that he had been confused about the sentence that he would receive under the amended charge. Specifically, he stated that he thought he was

getting the same deal as the accomplice and that he would receive a sentence range of zero to five years, not a sentence range of three to five years. Second, he complained that his counsel had been ineffective because "he failed to object to the sudden changes in [the] plea agreement." Third, he asserted that the State had breached the plea deal by filing additional charges stemming from the shooting.

¶ 11 Because Mr. Moa alleged that his prior counsel had been ineffective, the court appointed a new attorney to represent him. At the hearing on these motions, Mr. Moa's new counsel stipulated that Mr. Moa's plea was taken in full compliance with rule 11 of the Utah Rules of Criminal Procedure. In addition, Mr. Moa's prior attorney testified that Mr. Moa had understood that the amended charge required a sentence range of three to five years, but nonetheless wanted to enter a plea in order to be released from jail that day. The State also conceded that it had dropped its additional charges stemming from the shooting. Based on his former counsel's testimony, the State's concession, and the stipulation that the court had complied with rule 11 when accepting the plea, the district court concluded that Mr. Moa's plea was knowingly and voluntarily made. Thus, the court denied his motions and sentenced him to three to five years in prison.

¶ 12 On appeal to the Utah Court of Appeals, Mr. Moa argued for the first time that his plea was unknowing and involuntary because the district court had failed to comply with rule 11 when it accepted his plea.[3] Specifically, Mr. Moa alleged that the district court did not comply with rule 11(e)(4)(A) because it did not inform him of the intent element of the offense.[4] Because Mr. Moa

---

**2.** At the time Mr. Moa allegedly committed the crime, Utah Code section 76–10–508 provided that it was a class B misdemeanor for a person to "discharge any kind of dangerous weapon or firearm... within 600 feet of ... a house, dwelling, or any other building." UTAH CODE § 76–10–508(1)(a)(vii)(A) (2003). The section further provided that the charge would be elevated to a third degree felony, with an enhanced minimum sentence of three years, if the actor discharged the firearm "with intent to intimidate or harass another." *Id.* § 76–10–508(2)(b).

**3.** *State v. Moa*, 2009 UT App 231, ¶ 13, 220 P.3d 162.

**4.** *Id.; see also* UTAH R. CRIM. P. 11(e)(4)(A) (providing that the court may not accept a guilty plea until it has found that "the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements").

had not preserved this argument in the district court, the court of appeals applied the plain error doctrine and required that Mr. Moa show an error existed that was both obvious and harmful.[5] The court of appeals determined that Mr. Moa was not harmed by any error because he could not show prejudice.[6] Accordingly, the court of appeals denied Mr. Moa's motions to withdraw his plea.[7]

¶ 13 We granted certiorari to determine whether the court of appeals erred in holding that Mr. Moa had failed to demonstrate plain error in the acceptance of his plea. Mr. Moa argues that the district court's failure to inform him of all the elements of the offense is harmful per se, so a showing of prejudice is not required. In contrast, the State argues that Mr. Moa's claim should not be evaluated under the plain error standard because, by stipulating that the district court had complied with rule 11 in accepting his plea, Mr. Moa invited any error.

## II. THE SECOND CASE

¶ 14 After being released from jail, but before sentencing had occurred in the First Case, Mr. Moa was allegedly involved in another drive-by shooting. This time, he drove a vehicle into a Salt Lake City neighborhood while a passenger in the car fired a gun toward a home. Two people in the neighborhood saw the drive-by shooting, and one of them followed Mr. Moa's car as he drove away. Police officers soon joined the pursuit, and Mr. Moa led police on a high-speed chase. During the chase, Mr. Moa crashed head-on into one of the police vehicles and continued driving. The police eventually immobilized Mr. Moa's vehicle, but they had to use a taser on him twice before they were able to subdue and arrest him.

¶ 15 Mr. Moa later agreed to plead guilty to the third degree felonies of discharging a firearm from a vehicle and aggravated assault, and also to failing to respond to an officer's signal to stop, a class A misdemeanor. After accepting Mr. Moa's guilty plea, the court ordered a presentence report with sentencing recommendations. The presentence report contained Mr. Moa's criminal history, including multiple misdemeanor charges, felony convictions for theft and damage to a jail, the charges from the First Case, felony convictions from Washington for robbery and assault, and juvenile charges of aggravated assault.

¶ 16 In addition, the report contained statements from Mr. Moa. Specifically, he stated that he pled guilty because he "got into a car that a firearm was discharged from," "failed to stop and lost control of [the] car," and his car "made contact" with the police car. Mr. Moa also stated that he was "truly sorry to the public, [his] family and everyone that was affected by [his] actions," that he planned to "start living a positive healthy life," "get back into church," and "go back to school."

¶ 17 Ultimately, the presentence report recommended that Mr. Moa be given consecutive prison sentences in this case, with the sentences to run consecutively to one another and to any prior sentences. At the sentencing hearing, the judge received a copy of the presentence report and asked if there were any objections to its findings. Mr. Moa's counsel objected to the recommendation of consecutive sentences because the charges stemmed from one criminal episode and because Mr. Moa had expressed remorse. In response, the prosecutor stated that "[t]here's not just one victim in this case. This is a whole neighborhood who had multiple shootings, and finally got Mr. Moa because the citizens were willing to step up and put their own lives in danger." The prosecutor also described other events that occurred in the neighborhood:

> [T]here was a murder in front of [the] home [where the shooting occurred].... One of the bullets went into the [ ] home and hit a young girl in the head.... It didn't kill her, luckily. Mr. Moa gets released from custody. Within two days, there's a shooting again at this home. Neighbors come out, there are some wit-

---

5. *Moa*, 2009 UT App 231, ¶ 14, 220 P.3d 162.

6. *Id.* ¶ 17.

7. *Id.*

nesses, not enough to put together a case but police are looking for Mr. Moa.

¶ 18 At the conclusion of the hearing, the judge stated that he believed Mr. Moa to be "an extreme danger to any community that he happens to be in" and ordered him to serve consecutive sentences. In imposing this sentence, the judge did not refer to the prosecutor's statements or explain how he had weighed the sentencing factors. Mr. Moa appealed the order of consecutive sentences to the Utah Court of Appeals.

¶ 19 On appeal, Mr. Moa argued that the judge abused his discretion in ordering consecutive sentences because he reached his decision after improperly relying on the prosecutor's statements that Mr. Moa victimized the "whole neighborhood" and that other crimes had occurred in that neighborhood.[8] The court of appeals concluded that "the record does not support [the] claim that the [district] court actually relied on either of the prosecutor's statements," and thus held that the district court did not abuse its discretion in imposing consecutive sentences.[9]

¶ 20 We granted certiorari to determine whether the court of appeals erred in affirming the district court's imposition of consecutive sentences. To support his argument that the court of appeals erred in failing to find evidence of reliance, Mr. Moa highlights the fact that the judge did not specifically reject the prosecutor's statements and did not verbally acknowledge the mitigating factors favorable to Mr. Moa, and he argues that the imposition of consecutive sentences is unreasonable in light of our prior case law. In response, the State contends that there is no specific evidence, such as an affirmative representation, that the district court judge actually relied on the prosecutor's statements in imposing consecutive sentences. We have jurisdiction pursuant to section 78A–3–102(3)(a) of the Utah Code.

**8.**  *See id.* ¶ 19.

**9.**  *Id.* ¶ 20.

**10.**  *See Bluemel v. State,* 2007 UT 90, ¶ 9, 173 P.3d 842 (internal quotation marks omitted).

**11.**  "We note that the scope of our grant of certiorari, while generally binding on the parties for

## STANDARD OF REVIEW

¶ 21 "On certiorari, we review .... the court of appeals' decision for correctness and give its conclusions of law no deference."[10]

## ANALYSIS

I.  BECAUSE MR. MOA INVITED THE DISTRICT COURT'S ERROR BY STIPULATING THAT HIS PLEA WAS TAKEN IN COMPLIANCE WITH RULE 11, WE NEED NOT EVALUATE HIS CLAIM IN THE FIRST CASE UNDER THE PLAIN ERROR STANDARD

¶ 22 Regarding the First Case, we granted certiorari to determine whether the court of appeals correctly held that Mr. Moa failed to demonstrate that the district court plainly erred in denying his motions to withdraw his plea. But because we hold that Mr. Moa invited the district court's error by stipulating that his plea was taken in compliance with rule 11, we need not address whether the court of appeals' analysis was correct under the plain error standard.[11] Instead, we review our preservation requirements, the plain error standard, and the invited error doctrine. We then apply the invited error doctrine to Mr. Moa's claim that the district court should have recognized that he was not informed of an element of the offense during the plea hearing.

A.  *The Invited Error Doctrine Operates as an Exception to Plain Error Review*

¶ 23 As a general rule, "in order to preserve an issue for appeal[,] the issue must be presented to the [district] court in such a way that the [district] court has an opportunity to rule on that issue."[12] To determine whether an issue has been preserved, we

purposes of argument, does not preclude us from treating dispositive issues that become apparent when the advocacy process is complete." *Bangerter v. Petty,* 2009 UT 67, ¶ 11 n. 7, 225 P.3d 874 (internal quotation marks omitted).

**12.**  *Pratt v. Nelson,* 2007 UT 41, ¶ 15, 164 P.3d 366 (internal quotation marks omitted).

consider the following factors: "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority."[13] Our preservation requirement "is based on the premise that, in the interest of orderly procedure, the [district] court ought to be given an opportunity to address a claimed error and, if appropriate, correct it."[14]

¶ 24 When a party fails to present an issue to the district court, and instead raises the issue for the first time on appeal, "we require that the party articulate an appropriate justification for appellate review."[15] The party must argue either that his claim should be evaluated under the plain error standard[16] or that his claim qualifies as an exceptional circumstance.[17] Under the invited error doctrine, however, we have declined to engage in plain error review when counsel made an affirmative statement that led the court to commit the error.[18]

¶ 25 In declining to engage in plain error review in prior cases, we noted that the invited error doctrine ensures that parties cannot entice the court into committing an error and then reap the benefit of objecting to that error on appeal.[19] Indeed, application of the invited error doctrine serves three important purposes. First, it "discourag[es] parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal."[20] Second, it encourages counsel to "actively participate in all proceed-

ings and to raise any possible error at the time of its occurrence."[21] Finally, it "fortifies our long-established policy that the [district] court should have the first opportunity to address a claim of error."[22]

¶ 26 For these reasons, we have applied the invited error doctrine in a number of cases.[23] For example, we applied the doctrine in *State v. Hamilton* because, although defense counsel had affirmatively approved of a jury instruction, he argued on appeal that the same instruction was prejudicial.[24] Similarly, we applied the doctrine in *State v. Geukgeuzian* because, although defense counsel had provided the trial court with jury instructions that purported to list each essential element of the offense charged, counsel asserted on appeal that those same instructions had omitted the required mens rea element of the offense.[25] In concluding that counsel invited the error, we recognized that counsel's "failure to include a separate mens rea element in his proposed [jury] instruction was most likely inadvertent and not a conscious attempt to mislead the trial court."[26] Nonetheless, by affirmatively stating that the instruction listed all the essential elements of the offense, defense counsel "effectively led the trial court into adopting the erroneous jury instruction that he [then] challenge[d] on appeal."[27] And because the object of the invited error doctrine is to discourage parties from leading the court into committing an error and then benefitting from an objection to that error on appeal, we declined to con-

---

**13.** *Id.* (internal quotation marks omitted).

**14.** *Id.* (internal quotation marks omitted).

**15.** *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 (internal quotation marks omitted).

**16.** The plain error standard requires a showing that "[(1)] an error exists; [(2)] the error should have been obvious to the [district] court; and [(3)] the error is harmful." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (internal quotation marks omitted).

**17.** *See Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171.

**18.** *Pratt*, 2007 UT 41, ¶ 16, 164 P.3d 366.

**19.** *Id.* ¶ 17.

**20.** *Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171 (internal quotation marks omitted).

**21.** *Id.*

**22.** *Id.* (internal quotation marks omitted).

**23.** *See, e.g., id.* ¶ 21 (holding that the invited error doctrine precluded appellate review of defendant's claims); *State v. Dunn*, 850 P.2d 1201, 1220–21 (Utah 1993) (same).

**24.** 2003 UT 22, ¶¶ 54–55, 70 P.3d 111.

**25.** 2004 UT 16, ¶ 12, 86 P.3d 742.

**26.** *Id.*

**27.** *Id.*

sider the merits of the defendant's claims.[28]

¶ 27 Thus, where a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court need not consider the party's objection to that action on appeal.[29] The doctrine of invited error therefore can preclude even plain error review.[30] Accordingly, if Mr. Moa invited the error he now complains of, we need not review his claim under the plain error standard.

**B.** *Mr. Moa Invited the District Court's Error by Stipulating that His Plea was Taken in Full Compliance with the Provisions of Rule 11*

¶ 28 On appeal, Mr. Moa argues that the district court erred in denying his motions to withdraw his plea because the court should have recognized that he was not informed of an element of the offense during the plea hearing, and that his plea was therefore not knowingly and voluntarily made.

¶ 29 As an initial matter, we note that, pursuant to section 77–13–6 of the Utah Code, a plea may be withdrawn "only upon leave of the court and a showing that it was not knowingly and voluntarily made."[31] A plea is knowing and voluntary if it is made "with sufficient awareness of the relevant circumstances and likely consequences."[32] To ensure that defendants have a sufficient awareness of the consequences of their deci-

sion to enter a plea, we created rule 11 of the Utah Rules of Criminal Procedure.[33] Rule 11 is a prophylactic measure that highlights important constitutional rights a district court should address with a defendant before accepting his plea.[34] In relevant part, rule 11 provides that the court may not accept a guilty plea until the court has found that

(2) the plea is voluntarily made;

(3) the defendant knows of the right to the presumption of innocence, the right against compulsory self-incrimination, the right to a speedy public trial before an impartial jury, the right to confront and cross-examine in open court the prosecution witnesses, the right to compel the attendance of defense witnesses, and that by entering the plea, these rights are waived;

(4)(A) *the defendant understands the nature and elements of the offense to which the plea is entered, that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea is an admission of all those elements;*

(4)(B) there is a factual basis for the plea.[35]

¶ 30 In this case, Mr. Moa filed several motions to withdraw his plea, arguing that his plea should be withdrawn for three reasons: because he thought he would receive a different sentence, because his counsel was

---

28. *Id.* ¶¶ 12, 14.

29. *See Pratt*, 2007 UT 41, ¶¶ 17–18, 164 P.3d 366; *Winfield*, 2006 UT 4, ¶ 16, 128 P.3d 1171 ("Affirmative representations that a party has no objection to the proceedings fall within the scope of the invited error doctrine because such representations reassure the [district] court and encourage it to proceed without further consideration of the issues.").

30. *See Pratt*, 2007 UT 41, ¶¶ 16–18, 164 P.3d 366; *Winfield*, 2006 UT 4, ¶¶ 14, 16, 128 P.3d 1171.

31. UTAH CODE § 77–13–6(2)(a).

32. *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (internal quotation marks omitted).

33. *See State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242 ("[T]he substantive goal of rule 11 is to ensure that defendants know of their rights and

thereby understand the basic consequences of their decision to plead guilty.").

34. *See Bluemel v. State*, 2007 UT 90, ¶ 17, 173 P.3d 842 ("Rule 11 ... is designed to protect an individual's rights when entering a guilty plea by ensuring that the defendant receives full notice of the charges, the elements, how the defendant's conduct amounts to a crime, the consequences of the plea, etc." (internal quotation marks omitted)).

35. UTAH R. CRIM. P. 11(e) (emphasis added). As rule 11 is a prophylactic measure, we recently clarified that when evaluating whether a plea was knowingly and voluntarily made, courts should not limit their analysis to compliance with rule 11 during the plea hearing. *See State v. Alexander*, 2012 UT 27, ¶ 25, 279 P.3d 371.

ineffective, and because the State had breached the plea agreement. When the district court conducted the hearing on these motions, Mr. Moa's counsel stipulated that the plea was taken in full compliance with the provisions of rule 11. By stipulating that the plea complied with rule 11, Mr. Moa's counsel affirmatively represented to the court that (1) the plea was voluntarily made,[36] (2) Mr. Moa was aware of the constitutional rights he was waiving by pleading,[37] (3) there was a factual basis for the plea,[38] and (4) Mr. Moa understood all the elements of the offense and "that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt, and that the plea [was] an admission of all those elements." [39]

¶ 31 Based on counsel's stipulation, there was no reason for the court to examine whether Mr. Moa was in fact informed of all the elements of the offense. Indeed, the district court appears to have focused its inquiry exclusively on the three arguments Mr. Moa presented for withdrawing his plea. In this respect, Mr. Moa's stipulation enticed the court into concluding that his plea was knowingly and voluntarily made. Because an affirmative representation led the district court to commit the error that Mr. Moa now challenges on appeal, this case represents a classic example of invited error.[40]

¶ 32 Furthermore, we are not persuaded by Mr. Moa's argument that the doctrine of invited error is inapplicable because he did not make any affirmative statement *at the plea hearing*. In support of his argument, Mr. Moa asserts that the alleged error occurred when the district court failed to comply with the provisions of rule 11 in accepting his plea—not when the district court denied his motions to withdraw his plea. But Mr. Moa's framing of the error at issue on appeal

ignores the fact that he is appealing from the district court's order denying his motions to withdraw his plea. Because his appeal challenges the district court's action in denying his motions, *that* is the error we examine on appeal. And as discussed above, Mr. Moa's counsel *did* make an affirmative representation that led the district court to deny the motions on the basis that the plea was knowingly and voluntarily made.

¶ 33 Because Mr. Moa's counsel invited the district court's error of denying his motions to withdraw his plea in the First Case, we need not address whether the court of appeals correctly evaluated Mr. Moa's claim under the plain error standard.

## II. THE COURT OF APPEALS CORRECTLY AFFIRMED THE DISTRICT COURT'S IMPOSITION OF CONSECUTIVE SENTENCES IN THE SECOND CASE BECAUSE THERE IS NO EVIDENCE THAT THE DISTRICT COURT RELIED ON ANY IRRELEVANT INFORMATION

¶ 34 The second issue on certiorari is whether the court of appeals erred in affirming the district court's imposition of consecutive sentencing. When evaluating a sentencing determination, we "traditionally afford[ ] the [district] court wide latitude and discretion." [41] Thus, "we will reverse a [district] court's sentencing decision only if it is an abuse of the judge's discretion." [42] In determining whether to impose concurrent or consecutive sentences, the district court must consider "the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." [43] Although the court can consider other factors, we have stated that it is an abuse of discretion if a district court

36. *See* UTAH R. CRIM. P. 11(e)(2).

37. *See id.* 11(e)(3).

38. *See id.* 11(e)(4)(B).

39. *Id.* 11(e)(4)(A).

40. We recognize that in making the stipulation, Mr. Moa's defense counsel may not have intended to mislead the district court. But such an

intent is not necessary for us to apply our invited error doctrine. *See Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742.

41. *State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626 (first alteration in original) (internal quotation marks omitted).

42. *Id.*

43. UTAH CODE § 76–3–401(2).

relies upon irrelevant information to reach its decision.[44]

¶ 35 To establish that a district court abused its discretion by relying on irrelevant information, the defendant must show (1) evidence of reliance, such as an affirmative representation in the record that the judge actually relied on the specific information in reaching her decision, and (2) that the information she relied upon was irrelevant.[45] Evidence, such as a judge's affirmative representation of reliance, is necessary because "[n]either our case law nor our statutes require a [district] court to make specific findings of fact in a sentencing order."[46] In addition, we have stated that an appellate court cannot presume there is evidence of reliance from a silent record or mere introduction of potentially irrelevant information.[47] Indeed, as a general rule, we presume that the district court made all the necessary considerations when making a sentencing decision.[48]

¶ 36 When there is evidence in the record showing a sentencing judge's reliance on specific information, we will not consider it improper for a judge to rely on such information if "the evidence in question had indicia of reliability and was relevant in sentencing."[49] Thus, the defendant must demonstrate that the information was unreliable or irrelevant.[50]

¶ 37 We utilized this two-step analysis in *State v. Howell.*[51] In that case, the defendants challenged the imposition of consecutive sentences on charges of physical child abuse by arguing that the judge based his decision on irrelevant and unreliable information.[52] Specifically, the defendants alleged that in reaching his decision, the sentencing judge had relied on an ex parte phone call and letter, as well as evidence that the defendants sexually abused their children.[53] Regarding the ex parte phone call and letter, we concluded that, even though the judge mentioned these items at the sentencing hearing, he did not state that he had considered them in issuing his decision.[54] Because there was no affirmative representation by the judge, we concluded that there was no evidence that these items were "part of [his] deliberative process."[55] Thus, we did not examine whether the phone call or letter were relevant to defendants' sentences.

¶ 38 In contrast, regarding the evidence of sexual abuse, we concluded that the sentencing judge did rely on this information because he specifically stated at the sentencing hearing that he had reached his decision after having "taken into consideration ... the sexual ... abuse."[56] Because of this affirmative representation, we proceeded to examine whether the evidence of sexual abuse was relevant to the defendant's sentence.[57] We concluded that it "had indicia of reliability and was relevant in sentencing"

44. *See State v. Howell,* 707 P.2d 115, 117–18 (Utah 1985).

45. *See Helms,* 2002 UT 12, ¶¶ 10–12, 40 P.3d 626 (requiring a showing of reliance); *Howell,* 707 P.2d at 118 (requiring "that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence").

46. *Helms,* 2002 UT 12, ¶ 12, 40 P.3d 626.

47. *See id.* ¶ 11 (stating that an appellate court "will not assume that the [district] court's silence, by itself, presupposes that the court did not consider the proper factors as required by law").

48. *Id.*

49. *See Howell,* 707 P.2d at 118.

50. *See id.; see also State v. Strunk,* 846 P.2d 1297, 1300–02 (Utah 1993) (finding that because

the trial court specifically stated the mitigating factors it considered in imposing sentencing, it abused its discretion by failing to consider the defendant's age as an additional mitigating factor).

51. *See id.*

52. *Id.* at 117–18.

53. *Id.* at 117–19.

54. *See id.* at 119.

55. *Id.*

56. *Id.* at 117 (first alteration in original) (internal quotation marks omitted).

57. *Id.* at 119.

because it showed that the defendants either knew of sexual abuse or were "putting their heads in the sand to avoid finding out about it."[58] Thus, the sentencing judge's reliance was appropriate.[59]

¶ 39 In the case currently before us, Mr. Moa argues that the court of appeals erred in affirming the district court's order because the sentencing judge based his decision on two allegedly improper comments from the prosecutor.[60] Mr. Moa recognizes that the sentencing judge never made an affirmative representation that he had relied on the prosecutor's statements.[61] Nonetheless, Mr. Moa asserts that the judge *must have* relied on the prosecutor's statements because (1) the judge did not specifically reject the arguments as inappropriate for consideration, (2) the judge did not acknowledge any of the mitigating factors Mr. Moa introduced in the presentence report, and (3) the judge's sentence would not be reasonable in light of our holding in State v. Galli.[62] We find each of these arguments unpersuasive.

¶ 40 First, we do not find evidence of reliance from Mr. Moa's claim that the judge did not reject the prosecutor's statements. A sentencing judge is not required to articulate whether specific information was inappropriate for consideration, and the mere introduction of potentially improper information is not sufficient to establish reliance.[63] Furthermore, because a sentencing judge is not required to articulate what information she considers in imposing a sentence, it makes little sense to require her to articulate what information she does not consider. Because evidence of reliance must be more than the mere presentation of potentially irrelevant information, we reject Mr. Moa's first argument.

¶ 41 Second, the sentencing judge's failure to acknowledge specific mitigating factors does not show that she relied on the prosecutor's statements. As explained above, we do not require that sentencing judges articulate or acknowledge the factors they consider in imposing sentences.[64] Therefore, the failure to acknowledge specific mitigating factors cannot be used as evidence of reliance on potentially improper information.[65] Accordingly, we reject Mr. Moa's second assertion.

¶ 42 Finally, Mr. Moa's claim that his case is similar to State v. Galli does not demonstrate that the district court relied on the prosecutor's statements. Specifically, Mr. Moa asserts that the district court must have relied on the prosecutor's statements because otherwise his sentence would be unreasonable. But "the fact that [Mr. Moa] views his situation differently than did the [district court] does not prove that the [district] court neglected to consider" appropriate information or relied on irrelevant information.[66] Furthermore, even without the

58. *Id.* at 118 (internal quotation marks omitted).

59. *Id.* at 118–19.

60. Specifically, Mr. Moa asserts that the sentencing judge relied on the prosecutor's statements that the "whole neighborhood" had been victimized by the crime and that other crimes had occurred at the home where the drive-by shooting occurred.

61. Indeed, the sentencing judge merely stated that he considered Mr. Moa to be "an extreme danger to any community that he happens to be in."

62. 967 P.2d 930 (Utah 1998).

63. *See, e.g., Howell,* 707 P.2d at 117–18.

64. *See Helms,* 2002 UT 12, ¶¶ 11–12, 40 P.3d 626.

65. Furthermore, in this case, there is no evidence that the sentencing judge failed to give adequate weight to Mr. Moa's mitigating factors. An appellate court will only analyze whether the district court appropriately weighed certain factors when the district court provides detailed explanations for the sentence it imposes. *See Helms,* 2002 UT 12, ¶ 15, 40 P.3d 626. If the district court does not give detailed explanations for its sentence, appellate courts will assume that the mitigating factors presented to the court were appropriately considered. *See id.* In this case, the district court was presented with a presentence report that contained Mr. Moa's statements about his family, his religion, and his goal to turn his life around. But because the judge did not articulate how he weighed any mitigating factors, we must presume that the judge gave those factors the appropriate weight.

66. *Helms,* 2002 UT 12, ¶ 14, 40 P.3d 626.

prosecutor's statements, Mr. Moa's situation is distinguishable from that in *Galli*.

¶ 43 In *Galli*, the trial court made detailed written findings of the factors it considered in imposing the consecutive sentences.[67] Thus, after reviewing those factors, we held that the imposition of three consecutive sentences of five years to life imprisonment was excessive where the defendant committed crimes unlikely to lead to serious injury or death, accepted responsibility for his actions, had very little criminal history, and demonstrated an ability to rehabilitate himself.[68] Unlike the situation in *Galli*, the district court in this case did not make any findings about what it considered in imposing consecutive sentences. And when a district court is silent as to its reasoning for imposing consecutive sentences, *Galli* is inapplicable.[69]

¶ 44 In addition, the circumstances in *Galli* that made the defendant's sentence unreasonable can easily be distinguished from the circumstances in Mr. Moa's case. Unlike the defendant in *Galli*, Mr. Moa was involved in crimes that had the potential to inflict serious bodily harm, and he continued to engage in criminal activity. For example, Mr. Moa's crimes include two drive-by shootings and a high-speed car chase. Furthermore, Mr. Moa committed the drive-by shooting in the Second Case after being released from jail but before sentencing for the shooting in the First Case. In addition, Mr. Moa had an extensive criminal history, as outlined in the presentence report. Based on these circumstances, it was not unreasonable for the judge to impose consecutive sentences.

¶ 45 For the foregoing reasons, we conclude that there is no evidence that the district court actually relied on the prosecutor's statements in imposing consecutive sentences.[70] The district court made no affirma-

tive representation about what information it considered in imposing consecutive sentences, and Mr. Moa has not put forth any evidence showing such reliance. Accordingly, we conclude that the court of appeals did not err in upholding the district court's order of consecutive sentences.

## CONCLUSION

¶ 46 Regarding the First Case, we hold that we need not address whether the court of appeals correctly evaluated Mr. Moa's claim under the plain error standard because, by stipulating that his plea was taken in compliance with rule 11, Mr. Moa invited any error that may have been committed by the district court in this matter. In the Second Case, we hold that the court of appeals was correct in concluding that there is no evidence that the district court relied on any improper information in imposing consecutive sentences.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

67. *See Helms*, 2002 UT 12, ¶ 15, 40 P.3d 626 (discussing the facts in *Galli* ); *see also State v. Bluff*, 2002 UT 66, ¶ 67, 52 P.3d 1210 (same).

68. *Galli*, 967 P.2d at 938.

69. *See, e.g., Helms*, 2002 UT 12, ¶ 15, 40 P.3d 626 (distinguishing the holding in the case at hand from the holding in *Galli* on the basis that the lower courts in *Galli* had provided "detailed explanations for the sentences that they imposed" and "[t]he record clearly reflected that the trial courts failed to give adequate weight to certain mitigating circumstances," while the record in the case at hand "d[id] not disclose any such omission" (internal quotation marks omitted)).

70. Because there is no evidence of reliance, we need not determine whether the prosecutor's statements were, in fact, irrelevant. *See Howell*, 707 P.2d at 117–19.