IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| West Valley City, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20110291-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 13, 2012) |
| Armand Walljasper, | ) | |
| | ) | 2012 UT App 252 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091900728
The Honorable Randall N. Skanchy

Attorneys: Jeremy M. Delicino, Salt Lake City, for Appellant
Ryan D. Robinson and Victoria K. McFarland, West Valley City, for
Appellee

-----

Before Judges McHugh, Orme, and Christiansen.

McHUGH, Presiding Judge:

¶1      Armand Walljasper appeals from his sentence of sixty days in jail and eighteen
months of probation for two counts of violation of a protective order, which are each
class A misdemeanors. *See* Utah Code Ann. § 76-5-108 (2008); *id.* § 77-36-1 (2008)
(current version at *id.* (Supp. 2012)).[1]  We affirm.

---

[1]Because of substantive amendments to section 77-36-1, we cite the version of the
Utah Code in effect when the violations occurred.  *See* Utah Code Ann. § 77-36-1 (2008)
(current version at *id.* (Supp. 2012)).

BACKGROUND

¶2 This case arises out of a series of charges against Walljasper for violating a protective order entered at the request of the mother of his child (Victim). On August 12, 2009, Walljasper entered guilty pleas to two misdemeanor counts of violation of a protective order on the current charges. The trial court agreed to hold the guilty pleas in abeyance and placed Walljasper on probation, the terms of which included that he have no further violations. Subsequently, Victim filed an affidavit in support of an Order to Show Cause, alleging that Walljasper had again violated the protective order (the new violations). The trial court set the matter for hearing on February 28, 2011.

¶3 At the hearing, Walljasper admitted the new violations and the trial court revoked his probation on the current charges. The trial court then heard from the West Valley City (the City) prosecutor, who explained that Walljasper was already serving a sixty-day sentence for a related protective order violation (the related violation).[2] Trial counsel indicated that at the time of the hearing, Walljasper had completed approximately half of the sentence on the related violation, leaving about thirty more days of the jail sentence to serve. The court next heard from Victim, who expressed her desire that the court impose the maximum two-year sentence for the current charges, to be served after completion of the sentence on the related violation. She also detailed the impact of Walljasper's repeated violations of the protective order on her life. In response, Walljasper's trial counsel requested that any jail time be served concurrently with the jail sentence on the related violation. He explained that Walljasper had sixty-days leave from his employment to serve the sentence on the related violation, and that he would lose his job if he did not return to work at the end of that time. Trial counsel noted that without employment, Walljasper would be unable to pay child support. Finally, trial counsel urged the court to consider the "nonviolent" nature of Walljasper's violations of the protective order and that his criminal history was "relatively minimal." The trial court then requested input from the prosecutor, who asked for "additional punishment" beyond the sixty days Walljasper was serving for the related violation.

¶4 Following this argument, the trial court rescinded the pleas in abeyance on the current charges and entered Walljasper's pleas as guilty. It then stated, "The Court will

---

[2]It is unclear from the record whether the related violation involved the same victim.

impose 365 days in each [of the current charges] and run [these sentences] consecutive to [each other]," but also indicated that it would suspend the one-year sentences and "require that Mr. Walljasper serve . . . an additional 60 days . . . to what he has presently served [on the related violation]." Because Walljasper had already served half of the sentence on the related violation, the sentence on the present charges effectively added thirty days of jail time. The trial court next explained that the jail sentences would be followed by probation. While announcing the terms of that probation, the trial court paused to ask the attorneys to identify the agency that would be supervising Walljasper's probation on the related violation. Trial counsel replied, "I believe it will be AP&P [Adult Probation and Parole]. And, Judge, just for the record, I think Mr. Walljasper would like to allocute, if that's possible." The trial court replied, "Pardon me?" to which counsel responded, "[H]e'd like to allocute . . . . He'd like to address the Court if that's possible." The trial court responded, "Let me just finish this, though . . . . To be supervised by Adult Probation and Parole, and then I'll set forth some terms here in just a minute."

¶5     At that point, the trial court allowed Walljasper to address the court. Walljasper's uninterrupted statement comprises about two pages of the sentencing transcript. Walljasper expressed remorse, said that he had lost several jobs because of jail time, and stated his desire to get his "life back on track" so that he could be a better father. When Walljasper finished, the trial court immediately resumed its announcement of the terms of the probation and concluded the hearing without making any reference to Walljasper's statements. The court subsequently entered a written sentencing order consistent with the sentence announced prior to Walljasper's allocution.

ISSUE AND STANDARD OF REVIEW

¶6     Walljasper claims that the trial court violated his constitutional right to allocution by not inviting him to speak before imposing sentence and because, when the error was brought to its attention, the court "made no affirmative effort to . . . assure Walljasper his allocution could impact the sentence" and "did not acknowledge Walljasper's remarks in any fashion." The denial of the right to allocution is an issue of law that we review for correctness. *See Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

ANALYSIS

¶7     The right to allocution is guaranteed by the Utah Constitution. *See* Utah Const. art. I, § 12 ("In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel."); *State v. Anderson*, 929 P.2d 1107, 1111 (Utah 1996) (holding that the right to allocution "is an inseparable part of the right to be present" expressly granted by the Utah Constitution). Indeed, "from the beginning of the development of this state's criminal procedures, a high value was placed on a defendant's availability and opportunity to speak at trial and sentencing." *State v. Maestas*, 2002 UT 123, ¶ 47, 63 P.3d 621. The Utah Supreme Court has identified two purposes for the right to allocution: "to provide the defendant personally with an opportunity to address the court" and "to ensure that the judge is provided with reasonably reliable and relevant information regarding sentencing." *See State v. Wanosik*, 2003 UT 46, ¶ 19, 79 P.3d 937. While the United States Supreme Court has not recognized allocution as a constitutional right, it has indicated its importance by explaining that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality).

¶8     In addition, the right to allocution is codified in rule 22(a) of the Utah Rules of Criminal Procedure, which states, "Before imposing sentence the court shall afford the defendant an opportunity to make a statement and to present any information in mitigation of punishment." *See* Utah R. Crim. P. 22(a). Our supreme court has interpreted "the 'shall afford' language" in rule 22(a) as "requir[ing] trial courts to affirmatively provide the defense an opportunity to address the court and present reasonably reliable and relevant information in the mitigation of a sentence." *Wanosik*, 2003 UT 46, ¶ 23. "A simple verbal invitation or question will suffice, but it is the court which is responsible for raising the matter." *See id.* Rule 32 of the Federal Rules of Criminal Procedure imposes a similar obligation on the federal trial courts.[3]

¶9     The case before us does not involve a complete denial of Walljasper's allocution right. Rather, the issue is the timing of the exercise of that right. According to Walljasper, the trial court denied him any meaningful allocution by not inviting him to

---

[3]The federal rule requires that "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii).

speak until after it had announced his entire sentence, except the terms of probation. The City argues, however, that because the trial court was free to adjust the sentence based on Walljasper's statements, his right to allocution was not violated.

## I.  Correction of Initial Error

¶10    We first decide whether a trial court can correct an initial failure to invite a defendant to speak before imposing sentence by allowing the defendant to allocute after announcing the sentence but before concluding the hearing.  Although the Utah appellate courts have not addressed this precise question, our supreme court has considered the analogous issue of whether the trial court's subsequent actions can cure an initial failure to allow the victim to speak concerning the acceptance of a plea agreement.[4]  In *State v. Casey*, 2002 UT 29, 44 P.3d 756, the State charged the defendant with aggravated sexual abuse of a child, a first degree felony, but later entered into a plea agreement that allowed him to plead guilty to lewdness involving a child, a class A misdemeanor.  *See id.* ¶ 1.  The child victim and his mother wished to comment on the propriety of the plea agreement, but that fact was not brought to the trial court's attention.  *See id.*  As a result, the court accepted the defendant's guilty plea to the lesser crime without hearing from the victim.  *See id.*  When the trial court learned of the oversight through the victim's motion to set aside the plea, it "'informally' reopened" the plea proceedings at the sentencing hearing and allowed each of them to testify and the victim's counsel to argue.  *See id.* ¶¶ 2, 38 & n.12.  Ultimately, the trial court deferred to the prosecutor's discretion and reaffirmed the plea.  *See id.*  The victim appealed, claiming that his right to be heard on the plea agreement had been effectively denied. *See id.* ¶ 14.

¶11    The Utah Supreme Court agreed that the trial court had initially deprived the victim of his constitutional and statutory right to be heard at the defendant's change of plea hearing.  *See id.* ¶¶ 23, 38; *see also* Utah Const. art. I, § 28 (Declaration of the Rights of Crime Victims); Utah Code Ann. §§ 77-38-2(5)(c), - 4(1)(b) (2008 & Supp. 2012) (Rights of Crime Victims Act).  However, it held that the trial court had remedied that defect by allowing the victim and his mother to testify, and the victim's counsel to argue, before reaffirming the defendant's plea to the reduced charges.  *See Casey*, 2002 UT 29,

---

[4]Victims, like defendants, have both a constitutional and a statutory right to address the court.  *See* Utah Const. art. I, § 28; Utah Code Ann. § 77-38-2(5)(f) (2008); *id.* § 77-38-4(1)(b) (Supp. 2012).

¶¶ 38–39. Of particular significance for our purposes is the supreme court's reasoning that "the plea was subject to review up until the time of sentencing" and that, therefore, "the court permitted [the victim] to be heard at a time when he could have persuaded the court to reject the proposed plea." *See id.* ¶ 39. The supreme court further explained that "the record clearly demonstrates that the court reaffirmed the plea only after having accepted [the victim's] and his mother's testimony, and permitting argument by his counsel." *Id.*

¶12 Similarly, Walljasper had both a constitutional and statutory right to be heard before the trial court imposed sentence. *See* Utah Const. art. I, § 12; Utah R. Crim. P. 22(a). Although the trial court announced Walljasper's sentence, except the terms of probation, before defense counsel alerted it to its oversight, the trial court afforded Walljasper an opportunity to allocute at a time when he still could have persuaded the court to modify the previously announced sentence. *Cf. Casey*, 2002 UT 29, ¶ 40 (stating that the victim "has enjoyed the fruits of the right he now claims he was denied"). Moreover, before the court announced any sentence, trial counsel argued for a sentence that did not extend the jail time Walljasper was already serving on the related violation. Applying the supreme court's reasoning in *Casey* to this case, the trial court remedied the initial violation of Walljasper's right to be heard. *See id*. ¶¶ 38–40.

¶13 While neither party cites *Casey*, Walljasper contends that the trial court did not cure its prior oversight because it did not communicate to Walljasper that his statements could affect the sentence or expressly indicate that it had considered his statements.[5] In contrast, the City argues, "The record before this Court lacks any indication that the district court judge's preliminary pronouncement of a portion of [Walljasper's] sentence was either fixed or inflexible," or that the judge did not consider the allocution statements. Because there are no Utah appellate decisions that address this issue, the parties rely on decisions interpreting rule 32 of the Federal Rules of Criminal Procedure. *See generally State v. Wanosik*, 2003 UT 46, ¶ 23, 79 P.3d 937 ("[W]hen we are asked to define terms found in our rules and statutes, we often look to other jurisdictions with similar language for guidance.").

¶14 Our review of federal authority convinces us that whether the trial court has remedied the failure to invite the defendant to speak earlier in the sentencing

---

[5]Nothing in *State v. Casey*, 2002 UT 29, 44 P.3d 756, indicates whether the trial court gave such assurances to the victim.

proceedings is dependent upon the particular facts and circumstances of each case. *See United States v. Williams*, 258 F.3d 669, 674 (7th Cir. 2001) (explaining that rule 32 of the Federal Rules of Criminal Procedure "does not purport to set out a script that the district courts must follow when advising defendants of their right to allocution," and that "the substance of what occurred is what counts"). However, certain factors have particular significance. For example, federal courts consider whether the trial court's announcement of the sentence was tentative or conditional, as opposed to definitive and unconditional. *Compare United States v. Landeros-Lopez*, 615 F.3d 1260, 1265–66, 1268 (10th Cir. 2010) (holding that the trial court "prematurely adjudged" a defendant's sentence by "definitively announcing" the details of the sentence, including the terms of confinement and supervised release, before inviting him to speak), *and United States v. Luepke*, 495 F.3d 443, 445 (7th Cir. 2007) (noting that the trial court stated, "[I]t is adjudged the defendant is committed to the custody of the Bureau of Prisons for imprisonment for a term of 240 months," before "inviting any comment" from the defendant), *with United States v. Frost*, 684 F.3d 963, 980 (10th Cir. 2012) (distinguishing *Landeros-Lopez* because the trial court "did not engage in a lengthy, formal recitation of the defendant's sentence until after the defendant had made an extended plea for leniency"), *and United States v. Mendoza-Lopez*, 669 F.3d 1148, 1152 (10th Cir. 2012) (distinguishing *Landeros-Lopez* where the district court merely announced its "intention to sentence within [the] Guideline range" before allocution).

¶15    The federal courts also consider whether the trial court communicated to the defendant, before allocution, that it would carefully consider the defendant's comments and modify the previously announced sentence, if appropriate. *Compare Luepke*, 495 F.3d at 450 ("[T]he district court actually must take steps to *communicate* effectively to the defendant that, through his statement, he has a meaningful opportunity to influence the sentence."), *with United States v. Hoke*, 569 F.3d 718, 722 & n.2 (7th Cir. 2009) (distinguishing *Luepke* because "the court expressed clearly that it had not reached a conclusive decision regarding [the defendant's] sentence"). The federal decisions also focus on whether the trial court acknowledged the defendant's statements after they were made and explained its decision not to modify the previously announced sentence. *Compare United States v. Griffin*, 530 F.3d 433, 438–39 (6th Cir. 2008) (concluding that the error had been cured where the trial court assured the defendant it would consider his comments), *with United States v. Pelaez*, 930 F.2d 520, 524 (6th Cir. 1991) (holding that the failure to allow the defendant to allocute was not cured by reconvening the sentencing hearing to allow the defendant to speak because the trial court announced that it had no intention of modifying the sentence).

¶16    Further, these decisions review whether the defendant took full advantage of the belated opportunity to allocute. *Compare Frost*, 684 F.3d at 981 (holding that trial court did not plainly err where its conduct did not inhibit the defendant from making a meaningful allocution), *with Landeros-Lopez*, 615 F.3d at 1265, 1268 (noting that the defendant offered a brief apology and vacating the sentence because defendant's allocution had been only a "formality" (internal quotation marks omitted)), *and Luepke*, 495 F.3d at 445, 452 (vacating sentence where the defendant's belated allocution was merely, "Nothing, I'm just sorry for everything that's been done and the outcome of this"). Finally, some of these decisions turn on whether the defendant's objection to the timing of allocution has been properly preserved.[6] *See Frost*, 684 F.3d at 979; *see also United States v. Rausch*, 638 F.3d 1296, 1301 (10th Cir. 2011) (declining to exercise plain error review because the trial court's failure to ask the defendant personally whether he wanted to speak at sentencing did "not seriously affect the fairness, integrity, or public reputation of judicial proceedings"), *cert. dismissed*, 132 S. Ct. 474 (2011).

¶17    Keeping these factors in mind, we return to our analysis of whether the trial court adequately cured its failure to invite Walljasper to speak in mitigation before announcing his sentence. In doing so, we consider whether the purposes of allocution were served by affording Walljasper an "opportunity to address the court" and an opportunity to provide it with "reasonably reliable and relevant information." *See Wanosik*, 2003 UT 46, ¶ 19.

## II. Walljasper's Opportunity to Allocute

¶18    We first consider whether Walljasper had an "opportunity to address the court." *See State v. Wanosik*, 2003 UT 46, ¶ 19, 79 P.3d 937. The City calls our attention to *United States v. Laverne*, 963 F.2d 235 (9th Cir. 1992), where the Ninth Circuit concluded that the district court complied with rule 32 of the Federal Rules of Criminal Procedure, even though it announced the sentence before inviting the defendant to speak. *See id.* at 237–

---

[6]The preservation issue may not be as significant in Utah, where a sentence imposed without allowing a defendant to allocute "may be considered a 'sentence imposed in an illegal manner under rule 22(e).'" *See State v. Samora*, 2004 UT 79, ¶ 13, 99 P.3d 858 (quoting Utah R. Crim. P. 22(e) which allows a court to "correct . . . a sentence imposed in an illegal manner, at any time"). However, because Walljasper has not challenged his sentence as imposed in an illegal manner, we do not consider whether the timing of allocution rendered his sentence illegal under rule 22(e).

38 (citing Fed. R. Crim. P. 32(a)(1)(C)). The *Laverne* court reasoned that "the [district] court was able to consider the defendant's statement and was free to alter its view of the sentence if the defendant offered a sufficient reason for changing its view." *Id.* at 237; *accord State v. Casey*, 2002 UT 29, ¶ 39 ("First, we note that the plea was subject to review up until the time of sentencing."). The *Laverne* court also explained that the record reflected the defendant's "fair opportunity to personally persuade the court on the issue of mitigation" and the court's "serious attention" to those comments. *See Laverne*, 963 F.2d at 237. Accordingly, it held that the district court did not err because it had permitted the defendant an opportunity to address the court while "the sentencing hearing was still in progress." *See id.* at 237–38.

¶19    To the contrary, Walljasper cites *United States v. Luepke*, 495 F.3d 443 (7th Cir. 2007), which expressly rejected the premise that the purposes of allocution are satisfied "simply because, *at some point* before the close of a sentencing proceeding, a defendant is invited to speak." *See id.* at 450. In *Luepke*, the district court announced the sentence, including the details of "the terms of confinement and supervised release," and then asked the defendant if he had anything he wanted the court to consider "[b]efore *imposing* any sentence." *See id.* at 445 (alteration in original). The defendant responded, "Nothing, I'm just sorry for everything that's been done and the outcome of this." *See id.* On appeal, the Seventh Circuit acknowledged that the failure to invite a defendant to speak before a sentence is announced can sometimes be corrected, but held that to do so "the district court actually must take steps to *communicate* effectively to the defendant that, through his statement, he has a meaningful opportunity to influence the sentence." *See id.* at 450.

¶20    The Tenth Circuit adopted the holding and reasoning of *Luepke* in *United States v. Landeros-Lopez*, 615 F.3d 1260 (10th Cir. 2010), explaining that "when a defendant is invited to speak after a sentence has been adjudged, the defendant has 'little incentive to share his thoughts on the matter of a sentence that he ha[s] every reason to believe ha[s] already been decided.'" *Id.* at 1266 (alterations in original) (quoting *Luepke*, 495 F.3d at 450). However, in a more recent decision, *United States v. Frost*, 684 F.3d 963 (10th Cir. 2012), the Tenth Circuit distinguished *Landeros-Lopez*. There, the sentencing judge stated, "'I will . . . impose a sentence of 200 months,'" but then asked, "'[I]s there anything [the defendant would] like to say before I state a sentence?'" *See Frost*, 684 F.3d at 979. In response, the defendant read a prepared statement, "which covers about three pages of the transcript." *See id.* Later in the hearing, the trial court clarified, "'This is a proposed sentence, and you may comment on it.'" *See id.* After making a slight

modification in response to a request by defense counsel, the trial court affirmed the sentence and concluded the hearing. *See id.*

¶21 On appeal, the Tenth Circuit reiterated that "[i]f a court 'definitively' announces a defendant's sentence before giving him a chance to speak, the court commits reversible error" because it thereby communicates that the defendant "'would not have a meaningful opportunity to influence that sentence through his statements to the court.'" *Id.* at 979 (quoting *Landeros-Lopez*, 615 F.3d at 1268). Such errors, the Tenth Circuit explained, are "generally not cured by 'the court's later remark that it merely "intended" to impose' the sentence it announced." *Id.* (quoting *Landeros-Lopez*, 615 F.3d at 1268). However, because the defendant had not objected to the timing of the allocution in the trial court, the Tenth Circuit considered the issue under the federal doctrine of plain error, *see id.* at 979–81, which requires that an "error seriously affect[] the fairness, integrity or public reputation of judicial proceedings,"[7] *see United States v. Olano*, 507 U.S. 725, 736 (1993) (internal quotation marks omitted). The *Frost* court reasoned that although the trial court's initial statement that it "'will . . . impose a sentence of 200 months,'" may have inhibited some individuals from making a meaningful statement, the defendant took full advantage of the belated opportunity to speak. *See Frost*, 684 F.3d at 979–80. It also noted that the trial court did not provide "a lengthy, formal recitation of the defendant's sentence until after the defendant had made an extended plea for leniency." *See id.* at 980. Therefore, the *Frost* court affirmed the sentence despite the trial court's initial error. *See id.* at 981.

¶22 While the federal decisions are helpful, our supreme court's treatment of the victim's right to be heard in *Casey* convinces us that, under the present facts, Walljasper was afforded a meaningful opportunity to address the court. *See Casey*, 2002 UT 29, ¶ 41 (concluding that the trial court corrected its initial failure to allow the victim to speak by "reopening the plea hearing, accepting unrestricted testimony and argument, and reaffirming the plea"). We agree with Walljasper that the trial court announced his sentence in definitive terms when it stated, "[T]he Court will impose 365 days" on each misdemeanor. Furthermore, the trial court gave no indication that the sentence announced was subject to change or that Walljasper's statements could influence it. And there is nothing in the record that acknowledges Walljasper's statements or reflects the trial court's consideration of them. On the other hand, Walljasper took full advantage of his belated opportunity to speak in mitigation. He asked the court to

---

[7]The City has not challenged Walljasper's preservation of his objection to the timing of allocution on appeal.

sentence him to probation. In support of his plea for leniency, Walljasper indicated that he had learned his lesson and accepted all responsibility for what had occurred, stated that he wanted to be a good father to his son, and promised that he would comply with all of the court's orders in the future. Walljasper further explained that he had lost three jobs due to incarceration related to the protective order violations and that he could not afford to lose any more. On appeal, Walljasper does not identify anything more that he would have said in mitigation if he had been permitted to speak before the trial court announced the bulk of his sentence.

¶23     The length and detail of Walljasper's comments indicate that "even if the court's statements in theory could have 'effectively communicated'" to Walljasper that "'his sentence had already been determined,'" Walljasper's "conduct shows that the court's statements did not in fact communicate that to him." *See Frost*, 684 F.3d at 980 (10th Cir. 2012) (quoting *Landeros-Lopez*, 615 F.3d 1260, 1268 (10th Cir. 2010)). The record reflects that Walljasper took advantage of the opportunity to allocute, despite the prior announcement of most of his sentence. Accordingly, Walljasper was permitted to speak in mitigation and did so while his sentence was still "subject to review." *See Casey*, 2002 UT 29, ¶ 39.

¶24     Undoubtedly, the better practice in correcting a failure to invite the defendant to speak before the trial court begins to announce sentence is to communicate effectively to the defendant that his comments will still be meaningful. The risk of not doing so is that the defendant will be inhibited or discouraged from fully exercising his allocution right. While our supreme court has not specifically addressed whether it is error to chill a defendant's right to allocution in such a manner, a plurality of our supreme court has acknowledged the risk that allocution rights would be chilled if the defendant's statements could be admitted at a subsequent hearing. *See State v. Maestas*, 2002 UT 123, ¶ 49, 63 P.3d 621 ("The right to allocution would be meaningless if a convicted person's allocution statements could be used against him or her in a subsequent prosecution.").

¶25     However, because Walljasper took full advantage of his opportunity to speak before the sentencing hearing concluded, the purposes of allocution have been served in this case.[8] Walljasper was provided "personally with an opportunity to address the court," and his statements "ensur[ed] that the judge [was] provided with reasonably

---

[8]We offer no opinion on whether a belated opportunity to speak cures a prior allocution error where the record reflects that the trial court's premature announcement of sentence inhibited the defendant's allocution.

reliable and relevant information regarding sentencing" while it could adjust its initial pronouncement. *See State v. Wanosik*, 2003 UT 46, ¶ 19, 79 P.3d 937; *see also State v. Howell*, 707 P.2d 115, 118 (Utah 1985) ("The due process clause of Article [I], Section 7 of the Utah Constitution, requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence."); *cf. State v. Casey*, 2002 UT 29, ¶ 39, 44 P.3d 756 ("[T]he court reaffirmed the plea only after having accepted [the victim's] and his mother's testimony, and permitting argument by his counsel.").

### III. The Trial Court's Consideration of Walljasper's Allocution

¶26 Finally, Walljasper argues that he should be resentenced because the trial court did not expressly state that it had carefully considered Walljasper's comments. According to Walljasper, we should interpret the silence of the record on this point as a presumption that the trial court did not consider Walljasper's allocution. *See, e.g., United States v. Luepke*, 495 F.3d 443, 450 (7th Cir. 2007) (holding that the trial court must effectively communicate to the defendant that he has a meaningful opportunity to influence the sentence); *United States v. Margiotti*, 85 F.3d 100, 103 (2d Cir. 1996) (holding that the district court cured its earlier mistake in announcing sentence before allocution because it "gave [the defendant's] statements full consideration and responded by giving reasons for his decision to adhere to the previously announced sentence"). In contrast, the City argues that we should assume that the trial court knew it remained free to alter the sentence and that it took all relevant factors into consideration in declining to do so. *See, e.g., United States v. Engle*, 676 F.3d 405, 425 (4th Cir. 2012) (holding that rule 32 of the Federal Rules of Criminal Procedure "does not create a right of allocution at any specific point in the sentencing proceeding"); *United States v. Burgos-Andújar*, 275 F.3d 23, 30 (1st Cir. 2001) ("When a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statements before imposing a final sentence.").

¶27 Unless the record indicates otherwise, we presume that the trial court knew the law. *See State v. Kelsey*, 532 P.2d 1001, 1005 (Utah 1975). Furthermore, "as a general rule, we presume that the district court made all the necessary considerations when making a sentencing decision." *See State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985 (citing *State v. Helms*, 2002 UT 12, ¶ 12, 40 P.3d 626); *id.* ¶¶ 39, 45 (rejecting the defendant's claim that the trial court had considered inappropriate evidence in imposing consecutive sentences where it "made no affirmative representation about what information it considered"). While we can envision circumstances in which more may be required, under the present facts we are not convinced that the trial court's failure to

"articulate how [it] weighed any mitigating factors" raised by Walljasper requires resentencing. *See id.* ¶ 41 n.65; *id.* ¶ 40 ("[A] sentencing judge is not required to articulate what information she considers in imposing a sentence.").

¶28   To a large extent, Walljasper's comments were similar to those advanced by trial counsel before the court announced its sentence. *See United States v. Laverne*, 963 F.2d 235, 236–37 (9th Cir. 1992) (stating that the defendant "made the same arguments as his attorney" and that the trial court had "considered [the] arguments very carefully"). Although Walljasper took advantage of his belated allocution opportunity by apologizing for his conduct and promising not to violate the protective order again, *see Green v. United States*, 365 U.S. 301, 304 (1961) (plurality), he made those mitigating statements after admitting to or being convicted of six separate protective order violations. In addition, Victim gave a detailed and compelling account of how Walljasper's ongoing disregard for the protective order had impacted her security, career, social life, and ability to retain a daycare provider for her son. Thus, the trial court was presented with other facts and circumstances that weighed against Walljasper's mitigating statements. The better practice would have been for the trial court to explain to Walljasper that his comments had been considered, and to indicate that, despite the statements, it was imposing the sentence previously announced. Nonetheless, the failure to do so here does not support an inference that the trial court did not consider Walljasper's comments. *See Moa*, 2002 UT 28, ¶ 40. Instead, it is appropriate and reasonable to infer that the trial court considered the statements, but was not persuaded by them.

¶29   Accordingly, we conclude that the initial deficiency was remedied by the trial court's affording Walljasper an opportunity to allocute when his exercise of that right could affect his sentence and by Walljasper's making full use of that opportunity. *See United States v. Williams*, 109 F.3d 502, 513 (8th Cir. 1997) (holding that resentencing was not required where the trial judge corrected his initial failure to invite the defendant to speak by subsequently allowing him to do so and asking trial counsel if the defense would like the sentence reread after considering the statements); *United States v. Barnes*, 948 F.2d 325, 331 n.5 (7th Cir. 1991) ("[A] trial judge, realizing after sentencing that the right of allocution has been neglected, may rectify the situation by, in effect, setting aside the sentence, reopening the proceeding, and inviting the defendant to speak."); *cf. State v. Casey*, 2009 UT 29, ¶ 39, 44 P.3d 756 ("[T]he court permitted [the victim] to be heard at a time when he could have persuaded the court to reject the proposed plea.").

CONCLUSION

¶30    The trial court initially erred in definitively announcing most of Walljasper's sentence before inviting him to allocute.  However, it remedied that error by providing Walljasper an opportunity to speak in mitigation at a time in which he could still persuade the trial court to modify the sentence.  Walljasper took full advantage of that opportunity by making an extensive plea for leniency.  Thus, under the present facts, Walljasper was not effectively denied his constitutional and statutory right to allocution.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶31    I CONCUR:

_____
Michele M. Christiansen, Judge

-----

¶32    I CONCUR IN THE RESULT:

_____
Gregory K. Orme, Judge